(80 South. 115)

HENDERSON et al. v. CITY OF ENTER-PRISE et al. (4 Div. 792.)

(Supreme Court of Alabama. June 27, 1918. Rehearing Withdrawn Nov. 14, 1918.)

1. MUNICIPAL CORPORATIONS ⬤323(1) — IMPROVEMENTS—INJUNCTION.

Equity does not look with favor on bills to prevent the enforcement of municipal ordinances providing for improvements, such as street paving, and will not in such matters, in which the municipality has a legislative discretion, substitute their judgment for that of the municipal body.

2. MUNICIPAL CORPORATIONS ⬤323(2)—IMPROVEMENTS—NOTICE.

As the manner and time of notice for bids on proposed street paving are, under Code 1907, § 1367, left to the discretion of the council of cities, etc., and in the absence of statutory requirement municipal contracts need not be let on competitive bidding, enforcement of an ordinance providing for paving will not be enjoined, on the ground sufficient notice was not given for the reception of bids.

3. MUNICIPAL CORPORATIONS ⬤304(1)—IMPROVEMENTS—ORDINANCE.

A municipal ordinance providing for street paving held not open to attack on the ground of indefiniteness of description.

4. MUNICIPAL CORPORATIONS ⬤864(4) — BONDS—LIMITATION — INDEBTEDNESS — IMPROVEMENTS.

As, under Code 1907, § 1411, bonds of a city of less than 6,000 inhabitants, issued for the payment of improvements, do not become the general obligations of the city, but are a lien only against the property benefited, enforcement of an ordinance providing for paving in such a city will not be enjoined, on the ground the city was already indebted beyond the legal limits, and such bonds would increase the indebtedness; it being wholly speculative whether the city would attempt to pledge its credit for the paving.

5. MUNICIPAL CORPORATIONS ⬤323(1) — IMPROVEMENTS—INJUNCTION.

Whether the compensation of an attorney employed by a city in connection witn paving may be included as part of the cost of the improvement, within Code 1907, § 1365, is a matter for determination on the hearing of assessment, and is no ground for enjoining enforcement of the paving ordinance.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Suit by J. E. Henderson and others against the City of Enterprise and others. From the decree dissolving a temporary injunction, complainants appeal. Affirmed.

Appellants (complainants in the court below) filed this bill against the city of Enterprise and its municipal officers, seeking injunctive relief against said city letting

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a contract for certain street improvements, including paving and storm sewage, etc., as disclosed was contemplated by the city by certain ordinances and resolutions made exhibits to the bill. The complainants are taxpayers and own property abutting the streets upon which said improvements are sought to be made.

On the 3d of January, 1918, an ordinance of the city of Enterprise was passed establishing the grades for certain distances on Carmichael, Easy, and Henry streets in said city. This ordinance is made an exhibit to the bill, and is as follows:

"That the grade of Carmichael street and the curbs on both sides thereof from the north side of the Hilliard building, now occupied by Dorsey Brothers' Garage, to the south side of the Byrd & Heath building, now occupied by Benson & Heath, and the grade of Easy street and the curbs on both sides thereof from Carmichael street to a point 184½ feet east of Carmichael street, and the grade of Henry street and the curbs on both sides thereof from the tracks of the Atlantic Coast Line Railway to the west curb line of Edwards street in the city of Enterprise, Alabama, be and the same is hereby fixed and established as is shown by the profiles, plans, maps and drawings of the city engineer of said city of Enterprise now on file in the office of the city clerk of said city."

The bill further shows on the same day the council passed what is referred to as Improvement Ordinance No. 1, sections 1 and 4 of which read as follows:

"Section 1. That the city council has hereby determined to improve Carmichael street from the north side of the Hilliard building, now occupied by Dorsey Brothers' Garage, to the south side of the Byrd and Heath building, now occupied by Benson & Heath, and Easy street from Carmichael street to a point 184½ feet east of Carmichael street, and Henry street from the tracks of the Atlantic Coast Line Railway to the west curb of Edwards street, and the intersections of all intersecting streets and avenues between said points, be graded, curbed, and paved with vitrified paving brick together with suitable granite curbing and the necessary storm drains."

"Sec. 4. That storm water sewers shall be placed where necessary to properly drain said streets named in section 1 hereof."

Section 6 of said ordinance fixed January 23, 1918, as the day for hearing the objections to such proposed improvements. Section 7 adopted the drawings, plans, and specifications of the work, together with estimates prepared by the city engineer, then on file in the office of the city clerk, requiring that the same remain on file for inspection, and estimating the cost of the improvement at $30,000. The following section provided for the publication of the ordinance for two successive weeks in a newspaper regularly published in the city.

The bill shows that by another resolution one Rylance was employed as an attorney for the city in connection with said improvements, and his compensation for such services agreed upon. It is further shown that on January 22, 1918, adjournment was had to January 28, by the city council, for the purpose of hearing objections. That on the latter date certain objections and protests were made, declaring that the improvements would be insubstantial and weak, that labor was high, and it was an inopportune time to make said improvements. It is further shown the objections were without avail, and the council ordered the street paving and other work provided for in Improvement Ordinance No. 1 be confirmed and made in accordance with the plans and specifications on file. On February 1, 1918, the council met for the purpose of receiving proposals and letting the contract for making such improvements. This ordinance, which was also made an exhibit to the bill, shows that notice was given on Thursday, January 31, 1918, for the reception of proposals and the letting of the contract, by publication in the newspaper published in the city of Enterprise. The bill alleges that the time was entirely too short to give notice for competitive bidding, and opened the way for favoritism.

Complainants, on February 1, 1918, filed the original bill in this cause. Temporary injunction was issued and the bill was subsequently amended. Answer was filed denying the material averments thereof. Submission was had before the circuit judge sitting in equity, seeking to dissolve the temporary injunction for want of equity in the bill, and also upon the denials of the answer; affidavits were submitted by the respective parties, resulting in a decree dissolving the injunction. From this decree the complainants prosecute this appeal.

The equity of the bill is sought to be rested upon the ground of fraud, insufficiency in the matter of description of the improvements in the ordinances and resolutions, and upon the further ground that the contemplated cost of improvements will exceed $30,000, while the special benefits to be derived therefrom by the property owners will not exceed $5,000, thus leaving a difference of $25,000, which will become a liability against the city; and, as the city is already indebted to the full limit permitted by the Constitution, such indebtedness would be in excess of the constitutional provisions, and therefore should be enjoined. The bill shows that the city expects to issue bonds and sell the same to secure the funds with which to pay for said improvements.

The averments of the bill relied upon as constituting fraud may be summarized as follows: That the improvements will not be beneficial to any one; that the population of the city of Enterprise is 2,400 inhabitants;

that its streets are in excellent condition, easily kept, and improvements not necessary; that it will cost many times as much as the increase in the value of the adjacent property; that the city is already indebted in excess of its constitutional limitation, and that the difference between the cost of the improvements and the increased value of adjacent property will become an illegal debt against the city; that 80 per cent. of the owners of abutting property oppose the improvements; that their objections were overruled; that the city proposes to sell bonds at 91 cents on the dollar, which is in violation of the law forbidding a sale at a discount; and, further, that the town employed the agent of the persons with whom it expects and proposes to contract for the improvements to represent and advise it in all things pertaining to the improvements, and such person has been active throughout; that, when it was finally resolved that the contract should be let, there was only one insertion in the newspaper in the city, and therefore sufficient notice for competitive bidding was not given; that unusual hurry characterized every move, and, although it is apparent the improvements will exceed many times the special benefits, the council contemplated to assess most of it upon the abutting property; that, notwithstanding all this, the municipal officers are undertaking to make the improvements.

The second ground of attack is the insufficiency in the ordinances of the description of the property to be improved. Two sections of the ordinance appear above. Section 5 of Improvement Ordinance No. 1 reads as follows:

"That the cost of constructing the aforesaid improvements shall be assessed and levied upon or against the lots or parcels of land abutting on said streets which are improved, between the terminal points above provided for, to the extent of the increased value of such property by reason of special benefits derived from such improvements, but not in excess of the total cost of said improvements: * * * Provided, further, that no charge assessed upon or against any lot or parcel of land shall be greater than the increased value of such property by reason of the special benefits derived from such improvement."

It is insisted in the bill that the ordinances are indefinite both as to the pavement and storm sewage.

The third ground of attack is that the cost of the improvements will far exceed the special benefits, and that the difference will constitute an obligation against the city of Enterprise, and thereby increase the indebtedness of the city beyond its constitutional limits.

There is also an averment in the bill that the contract as proposed, calling for one-inch concrete base and four-inch brick, is too thin a base, and will not carry the traffic that prevails, will give way and be utterly valueless, putting the property of complainants in bad condition, and making it reasonably inaccessible, thereby damaging the property; that the city of Enterprise is insolvent, and could not be made to restore the streets to their original condition or respond to any damages therefor. This averment is specifically denied in the answer, and the respondents upon the hearing offered affidavits of three civil engineers, who were skilled and experienced in the business of civil engineering, to the effect the pavement contracted for, or proposed to be contracted for, and laid in the city of Enterprise, would be abundantly thick and substantial to support the traffic, would not give way, and would in no wise damage the property of the adjoining owners; that such method had been adopted by many towns in the North and South on account of the economy of construction and the satisfactory results obtained.

The answer further denies that the city authorities acted with undue haste, but, on the contrary, avers that all notice required by the statute had been given and objections had; that they acted in good faith, and that said Rylance bears no business relation with the persons to whom the contract would be let; and, in fact, they deny that said paving company alone had prepared a bid for said work.

The answer further avers that, if the mayor of Enterprise made any statements that the bonds would be sold at 91 cents on the dollar, such a statement would not be binding, and would have no legal effect upon the city of Enterprise; that if bonds are issued they will be issued within the limitations provided by law, and not otherwise.

The plans, specifications, and blueprints which were on file with the city clerk, together with photographic reproductions thereof, were offered in evidence, and appear in the record.

Sollie & Sollie, of Ozark, for appellants.
W. W. Sanders, of Elba, for appellees.

GARDNER, J. The foregoing statement of the case will suffice for a general outline of the questions here presented for consideration. The exhibits attached to the bill disclose that the authorities of the city of Enterprise have substantially complied with the statutes in the proceedings thus far taken for the street improvements mentioned above. [1] In Cramton v. City of Montgomery, 171 Ala. 478, 55 South. 122, it was said that a court of equity does not generally look with favor on bills to prevent the enforcement of municipal ordinances, or concern itself with irregularities in municipal procedure; that the municipality has the undoubted power to pave its streets, and "within the limits prescribed to determine when, where,

and how." It was further held that the municipality was in the exercise of a legislative discretion, and that "under these conditions the rule is well settled that 'courts have no jurisdiction to substitute their judgment for that of the municipal body, or interfere with the act or undertaking, because it is not consistent with the judicial reasoning or policy.' "

[2] Much stress seems to be laid upon the fact sufficient notice was not given for the reception of bids; but, under section 1367 of the Code of 1907, the manner and time of this notice is left to the discretion of council. It has been held that, in the absence of statutory requirement, municipal contracts need not be let under competitive bidding. 3 McQuillin on Municipal Corporations, § 1186.

No relationship between the attorney employed by the city and the paving company, to which it is alleged the contract for improvements will be let, was established, and any such relation was specifically denied in the sworn answer.

We think it quite clear that the right to injunctive relief, as sought by the bill, could not be rested upon any averments of fraud.

[3] The bill is without equity upon that feature attacking the ordinances for indefiniteness of description. It would seem upon an examination thereof that they appear to be sufficiently definite to substantially meet the requirements of the statute; but whether, strictly speaking, they are sufficiently definite in all respects, it is quite clear that the averments in this respect would not justify injunctive relief. The parties appeared before the council and made no objections on account of these matters. Upon this question see City of Birmingham v. Wills, 178 Ala. 198, 59 South. 173; City of Birmingham v. Abernathy, 178 Ala. 221, 59 South. 180; section 1380, Code 1907.

The bill avers that the proposed improvements will be of an insubstantial character, will weaken and give way, rendering the property of complainants reasonably inaccessible, and thereby damaging the same, for which they could receive no compensation, because of the insolvency of the city.

If it be conceded, without deciding, that these general averments, in anticipation of any work having been done, or the contract let, would give equity to the bill, yet this would avail the complainants nothing upon this appeal, as the evidence before the court below was very clear and full in support of the specific denials of such averments.

It is next insisted that the complainants are entitled to injunctive relief for the reason that the cost of the improvements will far exceed the special benefits to the property, and that the difference in the amount will constitute a liability against the city of Enterprise, which is already indebted beyond the constitutional limits. The bill avers that the city of Enterprise proposes to issue bonds with which to secure the funds necessary for the prosecution of the work, or the payment of the contract.

[4] The answer denies the indebtedness of the city is in excess of the constitutional limit. But, it is averred, even if that be true, the complainants will suffer no injury as taxpayers by reason of the creation of a liability in excess of the enhancement in value of the abutting property on account of the improvement, because, to the extent of such liability, the same would be void as an indebtedness against the city of Enterprise, and thereby could not be enforced as a liability. It is further averred in the answer that the enhancement in value of the abutting property will equal the cost of such improvement.

The city of Enterprise is shown to have a population of less than 6,000 inhabitants. That portion of section 1411 of the Code of 1907 here pertinent reads as follows:

"Any city or town having a population of less than six thousand may, notwithstanding the amount or character of any bonded or other indebtedness, issue such bonds, but the same shall be a lien or charge only against the property improved and against the fund collected from the assessments levied against the property improved, and shall not be the general obligation of the city or town, nor shall such city or town be in any way liable to the holders of such bonds in case of failure to collect the same."

It is thus seen that the bill charges that these bonds shall be issued for the payment of improvements which will become a general liability against the city; but, under the language of the above-cited statute, these bonds shall not be "the general obligation of the city or town, nor shall such city or town be in any way liable to the holders of such bonds in case of failure to collect the same."

There is nothing in any ordinance or proceeding of the council indicating that the city proposes to incur any obligations so far as the payment of the cost is concerned; but, on the other hand, it appears that the intention is to fasten the expense upon the abutting property on the streets to be improved, to the extent of the special benefits thereto resulting. No steps have been taken looking to any deficiency, if one should arise. The averments of the bill, therefore, in this respect are based upon the assumption that, as a matter of law, any such excess in cost over the benefits derived would become a municipal obligation, although no ordinance so provides, no contract has been let, no bid received, and no meeting of the council in response to the advertisement, and no opportunity therefore to impose conditions.

Before it could be said with any degree of accuracy what the action of the council would be, the bill was filed, and the city enjoined from entering into any contract whatever, although the city might be able to make a contract whereby the contractor assumed to do the work solely upon consideration of compensation from the assessment, and in case of deficiency the loss fall upon the contractor. The bill in this aspect, therefore, rests upon averments purely speculative. The matter of assessment remains to be fixed by the council, and from any such assessment complainants may appeal to the circuit court, where trial by jury may be had, and further appeal is provided to this court as in other cases.

Complainants by these averments seek to try in advance all these questions in a court of equity, and thereby forestall the statutory provisions in reference thereto, and by these general averments have attempted to fix a liability upon the city, which is wholly speculative and contingent, and in the face of the provisions of the above statute to the effect that the bonds shall in no event become the city's liability. The following authorities are of interest in this connection: German Nat. Bk. v. Covington, 164 Ky. 292, 175 S. W. 330, Ann. Cas. 1917B, and note p. 192; City of La Porte v. Gamewell Fire, etc., Co., 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. Rep. 359; Beard v. Hopkinsville, 95 Ky. 239, 24 S. W. 872, 23 L. R. A. 402, 44 Am. St. Rep. 237; Addyston Pipe, etc., Co. v. Corry, 197 Pa. 41, 46 Atl. 1035, 80 Am. St. Rep. 812.

The averments of the bill as to the statement made by the mayor clearly indicate such statements was of no binding legal effect upon the city, and the answer expressly avers that the bonds will only be sold within the limitations prescribed by law. We are of the opinion injunctive relief should not be rested upon this feature of the bill.

[5] It is further averred that the city has employed an attorney, and that his compensation will be included as a part of the cost of the improvements. Whether such expenditure may be said to come within the provisions of section 1365 of the Code of 1907 need not be here determined, as this is a matter to be considered upon the hearing of the matter of assessment, and clearly gives rise to no cause for the injunction sought.

We have reached the conclusion that the trial court correctly decreed in dissolving the temporary injunction, and the decree to that effect is here affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur.