## FEDERAL PUBLIC HOUSING AUTHORITY et al. v. MOBILE HOUSING BOARD et al.

### No. 11810.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1947.

Joseph Burstein, Atty., Public Housing Adm., of Washington, D. C., and Percy C.

---

Fountain, Asst. U. S. Atty., of Mobile, Ala., for appellants.

Alexander Foreman, Jr., of Mobile, Ala., for appellees.

Before McCORD, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

By the complaint and bill of particulars it was shown that appellant, Federal Public Housing Authority [hereinafter sometimes referred to as "Federal"], had made a loan to the Mobile Housing Board [hereinafter sometimes referred to as "Mobile"], of in excess of $1,500,000 to aid in construction of low-rent housing projects and as security for said loan had taken the bonds issued by the Board of Directors of the Mobile unit. In the contract Federal was obligated to pay to Mobile an annual contribution of 3½% of the development costs of the units. All net earnings of Mobile Housing Project were required to be used for the payment of principal and interest on the bonds, and any excess of earnings over operation costs and debt service would go in reduction of the contribution which Federal had agreed to make annually.

Appellant alleged that the defendants willfully, wrongfully, and arbitrarily violated the provisions of the contract in purchasing insurance at a cost greater than the lowest available rate in financially sound and responsible companies and thereby had increased the cost of operation of the housing project and that this had adversely deprived appellant of the advantage of having the sum represented by said excess insurance costs applied to the reduction of Federal's annual contribution.

Appellee had theretofore secured its insurance from fixed-premium stock companies. Appellant insisted in its complaint that insurance could be obtained in certain mutual companies which were financially sound and responsible, at a considerable annual saving by reason of the fact that those mutual insurance companies regularly return a dividend to the policyholder and without ever having exercised the reserved right and privilege of said mutual companies to require an assessment against the policyholder when necessary to pay losses.

Appellant exhibited a binder from Firemen's Mutual Insurance Company covering the insurance in question, and it alleged that the insurance could be purchased from said Firemen's Mutual Insurance Company for a deposit premium of 33¢ per hundred dollars for a three-year policy, and that said company had for many years past re-returned to the policyholder a dividend of at least 70% of the deposit premium, but it further alleges that assessments could be made by said company equal to five times the annual deposit premium. Although the appellant obtained a binder from the Firemen's Mutual Insurance Company, which is a company that may make assessments equal to five times its annual deposit premium, it nevertheless gave the names of five mutual companies, which it states were nonassessable companies, from which it asserted the insurance could be purchased for 30¢ per hundred dollars. Appellant tendered no binder from those companies.

After it learned, subsequent to the bringing of the suit, that Federal proposed to procure insurance on a three-year, instead of a one-year basis, appellee secured insurance on a three-year basis at the rate of 30¢ per hundred from stock companies without the provision for either assessments or dividends. The initial rate for which appellant secured a binder from Firemen's Mutual Insurance Company was 33¢ per hundred and was in excess of the rate of 30¢ per hundred for the three-year policies issued by the stock companies. Appellant asserts that the history of the mutual companies from which it proposed to secure the insurance revealed a regularity of annual dividends and a total absence of assessments, and, therefore, it argues that the mutual insurance which it sought to have issued was lower than the rate of stock companies by virtue of the dividend provisions in the mutual policies, even though the tendered policy obligated the policyholders to pay an assessment of not to exceed five times the initial premium deposit in the event same became necessary to meet losses.

Thus the complaint sought to convert the age-old economic controversy as to the advantage or disadvantage of mutual fire in-

surance over fixed-premium stock company insurance into a judicial controversy.

From time immemorial business men and economists have differed on this question. Neither Congress nor the legislatures of the states have settled the issue, and the type of fire insurance that a business man selects has long been considered a matter of economic choice.

■ It cannot be gainsaid that if the rate charged by the stock companies and the mutuals were each 30¢ per hundred, and if the premium charged by the mutual were actually reduced by an excess of premiums collected over cost, then the cost of mutual insurance would be less than the cost of stock company insurance. The test set out in the contract between Federal and Mobile is not the ultimate cost of the insurance, but the test is the rate. If the rates here were the same, the ultimate cost of the insurance to the policyholder would be less to the holder of the mutual policy, provided there is a dividend paid and provided there are no assessments. Notwithstanding the history of the mutual company that executed the binder in regularly paying dividends and in not making assessments, nevertheless both are contingent. Either may or may not happen. The fact that a company has regularly paid dividends and has never called upon its policyholders for an assessment does not prove that a great catastrophe, such as a hurricane that devastates great areas or a fire that destroys a great city, could not occur and thereby prevent the paying of dividends or demand the collection of assessments. Whether these things will happen cannot be settled by court decree. Whether it is a part of economic wisdom for the policyholder to acquire insurance at a fixed sum with no further liability to him, or whether he should take out insurance with the possibility of reduced cost but with the attendant possibility of being called upon to assist in paying the loss of others, is an economic issue that involves business discretion. It is not a judicial question in the absence of a definite and positive agreement to take out one type of insurance as distinguished from some other kind.

■ The Mobile Housing Board is a public body organized under the law of Alabama, having a Board of Directors clothed with the power to exercise its discretion in the management of the business of the housing unit, and as such it did not contract away to the Federal Public Housing Authority its discretion to settle the economic question presented in this case. In the absence of an abuse of that discretion the federal courts cannot, and should not, interfere. Van Antwerp et al. v. Board of Commissioners, City of Mobile, 217 Ala. 201, 115 So. 239; Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16; Henderson v. City of Enterprise, 202 Ala. 277, 80 So. 115. The jurisdiction of the federal courts is limited to judicial cases and controversies. Whether, for instance, the mutual insurance companies involved in this case actually carried large risks in the areas of Florida, Alabama, Mississippi, and Louisiana, where the recent great hurricane destroyed insured property of the value of many millions of dollars, such as might necessitate calling upon the policyholders to respond to assessments would not now be an appropriate question. But whether or not the consideration of such a possibility might be such as would influence a reasonable person in procuring insurance of a particular type is a question that calls for an answer over which the minds of reasonable men might differ, and the possession of the correct answer to which is not an exclusive attribute of judicial wisdom. The amount, type, and spread of the risks of insurance companies, mutual or otherwise, as well as the reputation and character of service rendered by the companies, their agents, engineers, adjusters, etc., are economic factors that address themselves to sound business discretion. The power to prophesy as to the time and extent of catastrophes might have been an attribute of the judges of ancient Israel, but that attribute does not adhere in judges of the federal courts of the present day.

The plaintiff alleges that: "The purchase of the insurance risks hereinbefore referred to, in violation of said contract, at a higher rate than available from financially sound and responsible insurance companies, will directly affect such excess earnings and re-

quire a greater amount of annual contribution from the plaintiff."

█ Moreover, the complaint fails to allege either: (a) that the Mobile Housing Board is insolvent and could not be made to respond to any judgment recoverable by virtue of such an alleged breach of its contract; (b) that the defendant had defaulted in the payment of the principle or interest on its bonds; (c) that its cost of operation had exceeded its earnings, and that in consequence appellant had been compelled to make expenditures; (d) that the alleged savings on insurance would have been sufficient to prevent appellant from annually making the contribution of 3½% according to its contract. It, therefore, seems that its allegation of immediate and irreparable injury is a mere legal conclusion. But be that as it may, we believe that the judgment of the lower Court was correct for the reason that the Board of Directors of the Mobile Housing Board had a discretion in the matter which is not shown to have been abused, and the exercise of which was unattended by fraud, without which there existed no justiciable issue.

The judgment of the Court below is affirmed.