# Tigrett *v.* Taylor.

*Bill to Enforce a Trust and to Compel an Accounting.*

(Decided June 29, 1912. Rehearing denied January 23, 1913. 60 South. 858.)

1. *Equity; Jurisdiction; Non-Resident.*—Under section 3054, equity could not obtain jurisdiction of a bill against a non-resident, who could not be personally served within the State, to secure an accounting of trust funds and securities, although it prayed as incidental relief the foreclosure of mortgages on lands within the State, such mortgages being part of the securities to be accounted for, the facts being such that complainant's right to foreclose could not be determined until after an accounting had been had.

2. *Same; Want of Jurisdiction; Waiver; Demurrer.*—Where a court of equity has no jurisdiction of the bill, the respondent did not

[Tigrett v. Taylor.]

waive the defect by joining other grounds of objection in his demurrer to the bill.

3. *Judgment; Non-Residents; Process.*—The fact that complainant could partially or wholly satisfy a personal judgment against a non-resident defendant by subjecting property in the State thereto will not, of itself, confer jurisdiction to obtain a personal judgment against such non-resident; the land not having been brought within the control of the court by a proper writ, and the respondent not having been personally served within the State, nor voluntarily appearing.

4. *Dismissal and Non-Suit; Pleading; Want of Jurisdiction; Demurrer; Plea.*—Where want of jurisdiction appears on the face of the proceeding, that question may be raised by motion to dismiss or by demurrer, but if the defect is not apparent from the face of the proceeding it must be raised by special plea.

McClellan, J., dissents.

APPEAL from Colbert Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by J. W. Taylor against C. F. Turner and I. B. Tigrett. From a judgment over-ruling a motion to dismiss for want of jurisdiction, holding pleas insufficient, and over-ruling demurrers to the bill, Tigrett appeals. Reversed and remanded.

The bill shows complainant to be a resident of Corinth, Miss., Turner a resident of Alabama, and Tigrett a resident of Jackson, Tenn.; that the Tishomingo Savings Institution is a corporation organized under the laws of the state of Mississippi, and engaged in the banking business, and that Turner became indebted to it in the sum of $10,000, evidenced by seven promissory notes, four in the sum of $1,000 each, one in the sum of $2,500, and one in the sum of $2,000, and another in the sum of $1,500; that in the regular course of business the Savings Institution became indebted to the First National Bank of Cincinnati and transferred and assigned certain collateral as security, consisting of notes, bonds, mortgages, etc., among which was Turner's note for $2,000, and also became indebted to the National Bank of Commerce of St. Louis, Mo.,

and transferred as collateral security certain notes and mortgages, among them two of defendant's notes for $1,000 each; and that it became indebted to the Hanover National Bank of New York, and transferred as collateral security to it certain bonds and mortgages and notes, among them two other notes for $1,000 each, and the one for $2,500, and the one for $1,500. The bill also sets out other indebtedness, and the transfer of other collateral, to other institutions; that later, at the suit of E. Van Winkle, the Savings Institution was put in the hands of a receiver, and that complainant, J. W. Taylor, was appointed receiver, he being also a party defendant to said suit, and that the assets of complainant and the Savings Institution were collected by the receiver under the order of the court, and distributed among its creditors, and that the suit was finally disposed of and the receiver discharged; that when the amount due the National Bank of Commerce became due and payable it sold all the collateral held by it, including the two Turner notes referred to, and became the purchaser of it, and thereby cut off the Savings Institution from all right to said collateral, or any part thereof. It is further alleged that after the appointment of a receiver, and before the sale by the National Bank of Commerce of the collateral held by it, complainant made and entered into an agreement with I. B. Tigrett, whereby he agreed, for the consideration of 8 per cent. interest and all expenses, to buy the collateral paper, including notes, deeds of trust, mortgagees, stocks, and bonds, which had been made to and hypothecated with said bank by the Savings Institution; complainant agreeing to furnish him with the list of all the solvent collateral papers desirable to be purchased, the purchases to be made in the name of Tigrett, to secure him for the money so advanced,

[Tigrett v. Taylor.]

Tigrett to be the judge of what should be bought, and complainant to look after the matter of making settlement and securing claims, where security was necessary. Later J. B. Sanders and S. S. Finger and Tigrett agreed to advance the money to pay for said collateral; each advancing one-third of the amount required, with the understanding and agreement that complainant should have the benefit of all the collections on the collateral over and above that required to pay the money so advanced, and all expenses, at interest of 8 per cent. The bill then sets out the number of shares of stock, the number of notes, the number of bonds, and a number of mortgages and deeds of trust, and also sets out a number of collections made by Tigrett and others, and some made by Tigrett himself, and that Tigrett now has possession of a number of notes, bonds, mortgages, etc., and that he has already collected $20,-000 more than enough to reimburse him for the money advanced, with interest and expenses. The bill prays for an accounting as to the amount of money advanced by Tigrett, the expenses paid out by him, and the interest on the same, also the amount collected by Tigrett, and the ascertainment of the papers still in his hands uncollected; that a decree be entered against Tigrett for the amount over and above the amount due him, and that he be required to surrender the notes, mortgages, etc., still in his possession; and that complainant be permitted to fasten a trust on the same, and to foreclose and collect such other and outstanding notes, mortgages, etc.; and incidentally for general relief.

R. F. SPRAGINS and E. B. ALMON, for appellant. The court was without jurisdiction to entertain the bill and as this appeared from the face of the proceeding the court should have granted a motion to dismiss the bill.

—Section 3054, Code 1907; Sims Chancery Practice, sections 39 and 40; *Eslava v. Lepetra,* 21 Ala. 505; *Sayre v. Elyton Land Co.,* 73 Ala. 85; *I. A. Pub. Co. v. W. U. Tel. Co.,* 83 Ala. 504; *Exchange Nat'l Bank v. Clements,* 109 Ala. 270; *Rucker v. Morgan,* 122 Ala. 217; Story's Conflict of Laws, 537; 16 L. R. A. 614; 110 U. S. 155; 67 L. R. A. 942. The situs of the debt is the domicile of the creditor.—*L. & N. R. R. Co. v. Dooley,* 78 Ala. 524. On these same authorities the demurrers should have been sustained as the want of jurisdiction is apparent from the allegations of the bill. Counsel discuss other matters going to the merits of the appeal, but in view of the opinion it will not be necessary to here set them out.

KIRK, CARMICHAEL & RATHER, for appellee. The bill presents four questions which must be adjudicated in determining the rights of the parties. First, the right to foreclose a mortgage on lands in this State belonging to complainant. Second, enforcing a trust in choses in action purchased under the agreement. Third, the right to have an accounting and fourth, to enforce complainant's equity to the 160 acres of land in Colbert county, Alabama. The overruling of the motion depends upon whether either of the foregoing presents a state of facts that brings the case within the provisions of section 3054, Code 1907. We insist that it clearly falls within sub-division 2 of said section.—*Wildsmith v. Troy,* 86 Ala. 258; 27 Cyc. 1543, 1545; *Center v. Planters,* 22 Ala. 743; *Prout v. Hogue,* 57 Ala. 28; *Kelly v. Browning,* 113 Ala. 420. The bill sufficiently showed a trust which a court of equity will enforce on land.— *Bates v. Kelly,* 80 Ala. 142; *Jordan v. Garner,* 101 Ala. 411; *Hodges v. Verner,* 100 Ala. 612; *Walker v. Sledge,* 65 Ala. 51. These authorities are conclusive against

respondent's motion to dismiss and apply with equal
force to the demurrers.  Counsel discuss the appeal on
its merits with citation of authority, but in view of the
opinion it is not deemed necessary to here set it out.
In the application for rehearing counsel insist that by
incorporating in his motion and demurrer other de-
fenses than that of want of jurisdiction that appellant
has placed himself in court.—*Lampley v. Beavers,* 25
Ala. 534; 3 Cyc. 405; 53 N. J. 623; 21 Ky. L. R. 452.

MAYFIELD, J.—The chancery court of Colbert
county had no jurisdiction.  The main equities of the
bill are to declare and enforce a trust, and to compel
an accounting.  Both parties to the trust and to the
account are nonresidents, and most all the transactions
between the parties occurred in other states.

The bill also seeks to have respondent Tigrett com-
pelled to surrender and deliver up to the complainant
a great number of collaterals, consisting of notes, bonds,
mortgages, deeds of trust, and corporate stocks, which
are alleged to be held in trust for complainant.  A few
of the notes and one or more of the mortgages were
executed by the respondent Turner, who resides in
Colbert county, Ala.; and the lands embraced in one
or more of these mortgages are situated in that county,
and the bill seeks to foreclose this mortgage.  These
facts, the complainant claims, give the chancery court
of Colbert county jurisdiction.

If the bill was filed by the proper party to foreclose
this mortgage, the court would have jurisdiction for
that purpose; but the equity of the bill or suit is not
the foreclosure of this mortgage.  The bill affirmatively
shows that it cannot be known that the complainant
has, or will have, an interest in this mortgage, or the
debt secured thereby, until an accounting and settle-

ment is had; in fact, the purpose of the bill is to compel this accounting and settlement, in order to ascertain if the complainant has an interest therein, and, if so, to what extent; and if, on the accounting and settlement, it is ascertained that complainant has an equity in the notes and mortgage, then that Tigrett be required to surrender them to complainant, and that the mortgage be foreclosed. The foreclosure of this mortgage and the cancellation of other deeds are matters purely incidental to the main equities of the bill, and are sought for the purpose merely of doing full and complete equity in the premises.

The respondent Tigrett being a non-resident, and no service being had except by publication, the chancery court could not compel the accounting, discovery, or settlement, and could not compel the surrender of the collaterals, which, like the person of the respondent, are beyond the jurisdiction of the court; and, as before stated, until this is done it is confessed that it cannot be ascertained what interest, if any, the complainant has in or to these collaterals, including the deeds and mortgages on lands in Alabama.

It therefore affirmatively appears, upon the face of the bill, that any decree the court could render in the premises would be wholly void and of no effect. We can see no possible good to be attained by continuing the suit, unless personal service can be had upon the respondent Tigrett, or he voluntarily appears and defends.

The mere fact that a plaintiff could partially or wholly satisfy a personal judgment against a non-resident by subjecting property in this state thereto will not, of itself, confer jurisdiction to obtain such personal judgment against the non-resident. The mere fact that a non-resident has property within the jurisdiction of

the state is not sufficient to justify an action in personam against the non-resident, where he has not been, and cannot be, served with process. Before the court, in such case, could proceed in rem against the property, it must be brought within the control of the court by seizure, levy, or other appropriate process against the property itself.

It is insisted by the appellee that the case made by the bill is within the protection of section 3054 of the Code, in that "the object of the suit concerns an estate of, lien, or charge upon lands." We have answered this contention by showing that this is not the object of the suit or the equity of the bill. Whether there can or should be any proceeding as against the land in Alabama, taking the averments of the bill as true, is contingent upon and merely incidental to the accounting and settlement of the trust. As there can be no discovery, accounting or settlement of the trust, it cannot be known that complainant has any estate in, lien or charge upon, the lands in Alabama. The only interest Tigrett is shown to have in the lands is that of mortgages; if the mortgagor should pay off the mortgage debt or redeem, then neither Tigrett nor complainant would have any possible interest therein. So the interest in the lands is wholly contingent upon the main equities of the bill, and is merely incidental to the relief sought.

It is next insisted by appellee that Tigrett has waived the question of jurisdiction by assigning other grounds of demurrer to the bill than those which go to the jurisdiction. We cannot assent to this contention. There is nothing in this record showing that respondent Tigrett has ever waived the question of jurisdiction; to the contrary, it is shown that he has, on all occasions, from first to last, in the lower court and in this

court, insisted upon the fact that the lower court had no jurisdiction.

The respondent first filed a motion to dismiss the bill for want of jurisdiction; the want thereof appearing on the face of the bill. This motion being overruled, he again raised the question, by a plea, and then by demurrer, and the question was in each instance ruled against him.

The mere fact that he incorporated in his demurrer other grounds, going to the equity of the bill, should not be taken as a waiver of the question, nor as submitting to the jurisdiction. There should be some other act on the part of the respondent to show that he had either waived the question, or submitted his rights or person to the jurisdiction of the court. This does not here appear, but the contrary does appear.

When the want of jurisdiction appears upon the face of the proceedings, as in this case, the question may be raised by motion to dismiss, or by demurrer; if the defect does not so appear, the question should be raised by a special plea. The rule is thus stated in 12 Encyclopedia of Pleading and Practice: "Appearance having no effect to waive a want of judicial power, the want of jurisdiction of the subject-matter may be raised by demurrer when such want appears on the face of the record, by motion to dismiss, or by motion in arrest, or the want of jurisdiction may be a ground for reversal on appeal or error, and the question may be raised even for the first time on appeal. If the want of jurisdiction does not appear upon the face of the record, the objection should be taken by answer or plea in abatement." Page 186. "When the court has no lawful power to act, by reason of the fact that such power either is not conferred or is expressly withheld, with regard to the subject-matter of the suit, the parties

thereto cannot be said to have waived their objection to this want of power because it is not made at the proper time. Such an objection cannot be waived, and is fatal at any stage of the proceedings."—Pages 188 189. "The jurisdiction of courts over the persons of the parties is another matter. The question is regarded as one of personal privilege in the party; and therefore if, by reason of a mere irregularity in the commencement of the proceedings, defective process, or even an entire absence of process, the objection that the parties are not properly brought before the court might lie, such an objection must be raised in limine, or it will be waived." Page 191. "The dismissal of a bill on demurrer for want of equity practically amounts to the same thing as dismissing it for want of jurisdiction, because a court of equity grants relief only in cases and under circumstances falling within its peculiar province, and a bill of complaint must necessarily state facts which confer jurisdiction in stating a case for equitable relief or interference. If a court of equity has no jurisdiction, and this condition appears on the face of the bill, it is proper to demur, though, if no objection has been taken, the court may dismiss the bill at the hearing, if it does not state a proper cause for relief." Pages 193, 194.

It follows, therefore, that the trial court erred in its rulings as to jurisdiction, and should have dismissed the bill.

The decree of the lower court is reversed.

Reversed and remanded.

SIMPSON, ANDERSON, SAYRE, and SOMERVILLE, JJ., concur. DOWDELL, C. J., not sitting.

McCLELLAN, J.—(dissenting).—In order to reverse the decree of the learned chancellor, who affirmed

by his ruling the jurisdiction of the chancery court of
Colbert county, as invoked in this bill, it is necessary
for this court to assume the purely legislative function
of amending Code, § 3054, which, in the presently per-
tinent particular, is thus written in the codification:
"Courts of chancery must take cognizance of cases in
equity: * * * 2. Against non-residents when the
object of the suit concerns an estate of, lien, or charge
upon, lands, or the disposition thereof, or any interest
in, title to, or incumbrance on personal property within
this state, or where the cause of action arose, or the
act on which the suit is founded, was to have been
performed in this state."

The amendment of the quoted statute effected by the
ruling now made is to interpolate before the word
"object," in the quoted statute, the words "chief, main,
or paramount," or to ingraft a proviso thereon that if
the object of the suit only *incidentally* or *collaterally*
concerns an estate of, lien or charge upon, lands, etc.,
the chancery courts shall not have jurisdiction thereof.
I am unwilling to approve the method or the result.

In *Sayre v. Elyton Land Co.,* 73 Ala. 85, 98, delivered
30 years ago, where the quoted statute was under re-
view, Chief Justice BRICKELL said: "The jurisdiction
of a court of equity over defendants not residing in the
state, and consequently not subject to be personally
served with process, is statutory and limited. It is not
in every case of equitable cognizance against such de-
fendants that the court may take jurisdiction. *The
statute defines with precision the cases in which the
court may intervene.* The object of the suit must con-
cern lands or personal property situate in the state,"
etc.

The definitive word, in presently important connec-
tion, in the statute is "concerns." It is not provided

that the title, interest, or estate in or the lien or charge upon, lands shall be the *sole object* of the suit, nor the chief, main, or paramount *object* of the suit. It is sufficient, for jurisdictional purposes in that connection, that the object of the suit concerns *lands,* etc.

When the statute was considered in the *Elyton Land Co. Case, supra,* it was not thought proper to pronounce, in its interpretation, that it did not mean what its unambiguous language only imports. ."Concerns," as there employed, obviously means "relating or pertaining to" an estate of, lien or charge upon, lands, etc. It is too plain to admit of doubt that the statute's provision, in this regard, does not hinge or condition the jurisdiction of equity upon a contingency. If one must be entitled, as of palpable right, against a non-resident, to an interest in, or lien or charge upon, etc., there would be no need to provide for a forum to determine that which is not contestable.

My opinion is the decree should be affirmed.