(93 South. 803)

CITY OF ALBANY et al. v. SPRAGINS et al.
(8 Div. 456.)

(Supreme Court of Alabama. June 30, 1922.)

1. Courts ⬅️12(2)—Bill by taxpayers to cancel contracts between city and nonresidents not demurrable for lack of jurisdiction.

A bill by taxpayers against a municipality and nonresidents, with whom it had contracted to cancel the contracts and restrain further performance thereof, held good on demurrer by nonresidents, for lack of jurisdiction.

2. Municipal corporations ⬅️339(4)—Whether street paving contracts be let on unit basis within discretion of city officers.

The manner of letting paving contracts is, under Code 1907, § 1367, left to the discretion of the municipal authorities, and in the absence of statutory requirement, that one contract was executed for paving six separate streets under six ordinances would not avoid the contract, if it was so severable and divisible as to the cost and expense of each street that the cost and expense could be separately ascertained and assessed against the abutting property.

3. Municipal corporations ⬅️339(4)— Unit paving contract void where pro rata expense of grading not ascertainable.

Where a unit contract for street paving did not provide the price for excavation but included that cost in the price fixed for the curb, paving, etc., and the cost and expense of the excavation on parts of some of the streets could not be separated from the cost and expense on streets and parts of streets where there was no excavation or grading required, and the cost was prorated under the contract and divided and assessed on all the property abutting on all the streets, the contract was not authorized under Code 1907, § 1359.

4. Municipal corporations ⬅️339(1) — Mayor without authority to contract for paving at price greater than authorized by council.

In view of Code 1907, §§ 1183, 1364, 1367, the mayor and clerk in executing a paving contract cannot change the price to be paid for it, fixed by the council, by increasing it without authority from the council.

5. Municipal corporations ⬅️339(3)—Provision in street paving contract for maintenance for one year not violative of code.

Provision in a contract for street paving held to be a guarantee of contractor's work and quality of material furnished by him for one year, and not violative of Code 1907, § 1359, providing that only cost and expense of an improvement may be assessed against abutting property.

6. Contracts ⬅️143 — To be construed as a whole.

Written contracts must be construed in their entirety from the whole of the contract, every word, every sentence must be looked to on the subject to gather the intent of the parties, and each sentence considered with all other sentences on the same subject-matter.

7. Municipal corporations ⬅️339(3)—Contract for paving not to include guaranty of general repairs from usual wear, etc.

Stipulations for general repairs from usual wear and common use for one year, without regard to defective workmanship and material, cannot be included in a pavement contract cost of which is to be assessed against the abutting property on the street.

8. Municipal corporations ⬅️339(3)—Provision for contractor's securing claims against city arising from negligence did not invalidate contract.

Where the provision of a paving contract as to the protection of the public and saving the city harmless from the contractor's negligence did not increase or diminish the cost or expense of the pavement to be assessed against property abutting, and did not place on contractor any liability which rested on the city, the provision did not invalidate the contract.

9. Municipal corporations ⬅️63(1)—Whether council exercised judgment in letting paving contract on cost plus basis not for court to decide.

In view of the authority conferred on a city council under Code 1907, § 1367, whether the city council exercised good or bad judgment in letting a paving contract on cost plus basis is not a question for the courts.

Gardner, J., dissenting.

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Bill by R. E. Spragins, Shelby Fletcher, H. B. Beard, and John W. Knight against the City of Albany, W. M. Leftwich, and the American National Bank, to annul contracts entered into by the City of Albany with the other respondents to the bill, and for injunction. From a decree overruling demurrers to the bill, respondents appeal. Affirmed.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 207 Ala. 86.

The unit contract prices listed in an exhibit to the bill are as follows:

"Proposal of W. M. Leftwich Company for street paving work to be done by the City of Albany, Alabama, under Improvement Ordinances 358, 359, 360, 361, 362, and 363, and submitted to the city council January 20, 1920, and amended March 16, 1920.

| | |
|---|---|
| Stone or concrete headers per foot | $ .55 |
| Curb, 5 inch by 12 inch, per foot | .60 |
| Curb, 6 inch by 10 inch, per foot | .55 |
| Concrete gutter, 2 feet wide, per lineal foot | .60 |
| Concrete gutter, 3 feet wide, per lineal foot | .90 |
| Combination curb and 2 feet gutter, per lineal foot | 1.20 |
| Combination curb and 3 feet gutter, per lineal foot | 1.50 |
| 8-inch storm sewers, per lineal foot | 1.25 |
| 12-inch storm sewers, per lineal foot | 2.00 |
| 15-inch storm sewers, per lineal foot | 2.25 |
| 24-inch storm sewers, per lineal foot | 4.50 |
| Catch-basins complete, each | 60.00 |
| Manholes complete, each | 55.00 |
| Bituminous concrete pavement with concrete base (specification A), per square yard | 3.75 |
| Bituminous concrete pavement with macadam base (specification B), per square yard | 3.25 |
| Penetration bituminous and macadam pavement (specification C), per square yard | 2.55 |
| Bituminous surfaced macadam pavement (specification D), per square yard | 1.75 |
| Plain macadam pavement on Summerville road (specification E), stone delivered per cubic yard | 3.50 |
| All other work on Summerville road at cost plus 10 per cent. | |
| Resetting curb, per lineal foot | .25 |
| Moving curb, per lineal foot | .50 |
| Reinforced concrete, per cubic yard | 40.00 |
| Brick pavement, per square yard, cost plus 15 per cent. | |
| Excavation, without charge; it being understood that the cost of any excavation needed for any curbing, paving, etc., is included in the price paid for said curbing, paving, etc. | |
| Bituminous concrete pavement, with macadam base (specification B) on Second Avenue East, from Grant to south line of Jackson, laid on present base, which is to be scarified and resurfaced, adding new stone where necessary, per square yard | 1.75 |
| On all streets except Second Avenue East, from Grant to south line of Jackson, and Summerville road, having old macadam pavement in place which can be used as part of new pavement, the city shall receive credit for said macadam at the rate of $3 per cubic yard compact measurement, or $2 per cubic yard loose measurement. | |
| Concrete pavement on car tracks, per square yard | 4.10" |

Tennis Tidwell and G. O. Chenault, both of Albany, for appellants.

The contract is separate and divisible. 48 Ind. App. 448, 93 N. E. 877; 13 C. J. 563; 4 Elliott on Contracts, § 3667; 200 Mass. 158, 86 N. E. 306. The city was authorized to enter into one contract for the several improvements. Code 1907, § 1367; 4 McQuillin on Mun. Corp. § 1913; 115 Mo. 572, 22 S. W. 490; 89 Or. 192, 173 Pac. 305; 138 La. 488, 70 South. 487; 142 Ind. 123, 41 N. E. 375; 148 Wis. 22, 134 N. W. 136; 100 Atl. 208. Appellees cannot complain of threatened assessment against their property; if the city finally imposes an assessment upon their property, they have an adequate remedy at law. 171 Ala. 478, 55 South. 122; 202 Ala. 277, 80 South. 115; 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20. The mayor and clerk were authorized to make contract to pay $1.75 per yard for pavement specification D. (C. C.) 55 Fed. 756; 22 C. J. 130; 2 Page & Jones on Tax. § 1290; 3 McQuillin on Mun. Corp. § 1251; 10 R. C. L. 80; 205 U. S. 410, 27 Sup. Ct. 505, 51 L. Ed. 860. It is within the power of municipalities, in contracting for public improvements, to bind the contractor to guarantee and maintain the work for a stipulated time as to defects arising from improper workmanship and material. 60 Kan. 833, 58 Pac. 474; 168 Ill. 153, 48 N. E. 311; 161 Ill. 16, 43 N. E. 607; 107 Iowa, 90, 77 N. W. 532; 104 Iowa, 160, 73 N. W. 650; 60 N. J. Law. 394, 38 Atl. 635; 61 N. J. Law. 599, 40 Atl. 575, 44 L. R. A. 540, 68 Am. St. Rep. 714; 137 Mo. 543, 38 S. W. 458; 147 Mo. 467, 48 S. W. 939, 48 L. R. A. 279; 155 Mo. 391, 56 S. W. 449, 48 L. R. A. 285; 157 Ind. 401, 61 N. E. 932, 55 L. R. A. 564; 158 Mo. 534, 58 S. W. 934, 54 L. R. A. 492; 75 S. C. 549, 56 S. E. 381, 8 L. R. A. (N. S.) 412, 117 Am. St. Rep. 917, 9 Ann. Cas. 829. The relief prayed against the nonresident respondents would involve personal decrees against them, and, no personal service having been had, such personal decrees could not be enforced under this bill. 201 Ala. 454, 78 South. 832; 180 Ala. 296, 60 South. 858; 203 Ala. 54, 82 South. 14; 12 Ency. Pl. & Pr. 188. A foreign corporation cannot be sued, unless it voluntarily appears to defend. 83 Ala. 505, 3 South. 449, 3 Am. St. Rep. 758; 73 Ala. 85; 18 Wall. 350, 21 L. Ed. 959; 32 N. J. Law, 15.

Callahan & Harris, of Decatur, for appellees.

The bill was properly filed by complainants. 149 Ala. 119, 43 South. 92; 136 Ala. 202, 34 South. 194. The improvement contract must conform to the ordinance authorizing the improvement; otherwise it is invalid. 2 Page & Jones, Tax. § 850; 158 N. Y. Supp. 475; 238 Mo. 339, 141 S. W. 1116; 174 Ill. 366, 51 N. E. 748; 196 Ill. 603, 63 N. E. 1075; 250 Ill. 273, 95 N. E. 203; 10 Wash. 435, 38 Pac. 1132; 99 Cal. 519, 33 Pac. 1082; 96 Cal. 191, 31 Pac. 7; 19 R. C. L. 356. The provision in the contract for guaranty and maintenance rendered it void. 149 Ala. 119, 43 South. 92; 265 Mo. 529, 178 S. W. 98, L. R. A. 1915F, 854; 33 Or. 307, 52 Pac. 28, 44 L. R. A. 527, 72 Am. St. Rep. 713. The action of the mayor and clerk in contracting to pay $1.75 a yard for pavement under specification D was void. 20 Md. 1, 83 Am. Dec. 541; 19 R. C. L. 345. The court had jurisdiction to enjoin the city of Albany from paying out the public money on an unauthorized contract. 28 Cyc. 1037.

MILLER, J. This bill of complaint was filed by R. E. Spragins and others against the city of Albany, W. M. Leftwich, and the

American National Bank. The complainants are taxpayers in the city of Albany, and own hundreds of lots in the city. W. M. Leftwich, under contract with the city of Albany, is paving six of the streets of the city. Complainants own some lots fronting on each of the streets being paved under the contract. The bill seeks to have this contract declared illegal, null, and void, and canceled by the court, and requests injunction against Leftwich restraining and enjoining him from doing any further work under the contract, and enjoining the city of Albany from making any further payments to him for work under it. W. M. Leftwich is a resident of, and his post office is, Nashville, Tenn.

The bills avers that the city of Albany has entered into a contract with the American National Bank to borrow $150,000 for the purpose of enabling the city to pay the same out under the terms of the pavement contract to Leftwich; that $27,000 of the sum has been secured by the city. The bill seeks to declare this contract to borrow the balance null and void, and for an injunction to enjoin the city of Albany from receiving it and the bank from paying it to the city. The American National Bank is a corporation, nonresident, of Nashville, Tenn.

It appears from the bill that the city of Albany intend and will, when the illegal pavement contract with Leftwich is completed, assess the costs and expenses of the improvement against the property of complainants and others abutting on the street so improved, to the extent of the increased value of such improvement to the property by reason of the special benefits derived from such improvement.

The two nonresident defendants demurred specially and appeared specially by the demurrer to only test the jurisdiction of the court. The city of Albany appears generally by demurrer to test the jurisdiction of the court also, and to test the equity of the bill.

The demurrers of the defendants to the bill of complaint as amended were overruled by the court, from this decree the defendants appeal, a severance is granted, and each separately assigns this decree as error.

The bill seeks to cancel and annul two contracts. The bank is a party to one contract and Leftwich is a party to the other contract. The city of Albany is a party to both contracts. The bank is directly interested in one contract, Leftwich is directly interested in the other contract, and the city of Albany is directly interested in both contracts. The court could not cancel these two contracts without these parties. They are essential, vital, necessary parties to this cause. Berlin v. Sheffield Coal, etc., Co., 124 Ala. 322, 26 South. 933; Carlisle v. Crump, 165 Ala. 206, 51 South. 744. These three are made parties to the cause by the prayer and averments of the complaint. They are the only defendants, and it appears on the face of the complaint that the city of Albany is a resident, municipal corporation; that Leftwich is a nonresident person residing in, with his post office at, Nashville, Tenn., and the bank is a nonresident corporation, with post office address Nashville, Tenn.

The city of Albany, by demurrer, questions the jurisdiction of the court of the cause, because on the face of the bill two of the defendants are indispensable parties and they are nonresidents, and the bill fails to state a cause of action against either of them under the statute. Section 3054, subd. 2, Code 1907. This is permissible. Iron Age Pub. Co. v. West. U. T. Co., 83 Ala. 498, 3 South. 449, 3 Am. St. Rep. 758; Treadaway v. Stansell, 203 Ala. 52, 82 South. 12.

These nonresident defendants appear specially by demurrers to test the jurisdiction of this court as to them and to the subject-matter of this suit. This is the limited appearance made by them. There is nothing in the record indicating service on either of them in any manner or form of any process in this cause. This special appearance by demurrer for limited purposes mentioned is not a waiver of the question of jurisdiction of the person of the defendants; there is no submission thereby of the person of either to the jurisdiction of the court; and such limited appearance for such purposes is permissible. Tigrett v. Taylor, 180 Ala. 296, 60 South. 858.

"When the court has no lawful power to act, by reason of the fact that such power either is not conferred or is expressly withheld, with regard to the subject-matter of the suit, the parties thereto cannot be said to have waived their objection to this want of power because it is not made at the proper time. Such an objection cannot be waived, and is fatal at any stage of the proceedings." Tigrett v. Taylor, 180 Ala. 304, 60 South. 860; 12 Ency. Pl. & Pr. p. 186.

The gravamen of this suit is the cancellation of the two contracts and for injunctions against the two nonresident defendants and the city of Albany, restraining them from performing their respective contracts. This relief—cancellation of contracts and injunctions restraining their enforcement—prayed for under the averments of the bill, if granted, necessarily involves a personal decree against each of the nonresident defendants. No personal notice of the suit having been given the nonresident defendants, and the court having no jurisdiction of them personally, no such personal decrees could be rendered and enforced by the court in this cause. This court must have jurisdiction of the person of the nonresident by personal service, or a waiver thereof by him, before a personal decree can be rendered against him.

These defects in the bill appear on the face thereof, and the demurrers of respondents raising them should have been sustained. Long v. Clark, 201 Ala. 454, 78 South. 832; Treadaway v. Stansell, 203 Ala. 54, 82 South. 12; Tigrett v. Taylor, 180 Ala. 296, 60 South. 858; Visible Meas. Gas., etc., Co. v. McCarty, 206 Ala. 588, 91 South. 383; Iron Age Pub. Co. v. West. U. T. Co., 83 Ala. 498, 3 South. 449, 3 Am. St. Rep. 758.

Subdivision 2 of section 3054, Code 1907, confers jurisdiction on courts of equity against nonresidents in four particular classes of cases, as stated in Iron Age Pub. Co. v. W. U. T. Co., 83 Ala. 498, 3 South. 449, 3 Am. St. Rep. 758, as follows:

"(1) When the object of the suit concerns an estate of, or lien or charge upon lands within this state, or the disposition thereof; or (2) any interest in, title to, or incumbrance on, personal property within this state; or (3) when the cause of action arose in this state; or (4) when the act on which the suit is founded was to have been performed in this state. The jurisdiction, as thus conferred, is plainly statutory and limited; and the general rule being, that a foreign corporation cannot be sued, unless it voluntarily appears to defend, it being impossible for the court to extend the arm of its process into a foreign state or territory, for the purpose of reaching it, it follows that the bill cannot be retained, unless the case made by it falls within the statute, or else it is made to appear that this objection has been obviated by an actual appearance of the defendant, so as to confer jurisdiction of its person. Sayre v. Elyton Land Co., 73 Ala. 85; Galpin v. Page, 18 Wall. 350· Field on Corporations (Wood's Ed.) § 329, note 3; Camden, etc., Co. v. Swede Iron Co., 32 N. J. Law, 15; Freeman on Judg. (3d Ed.) §§ 567, 568."

See, also, Iron Age Pub. Co. v. West. U. Tel. Co., 83 Ala. 505, 3 South. 451, 3 Am. St. Rep. 758; section 3054, Code 1907; Treadaway v. Stansell, 203 Ala. 54, 82 South. 12; Visible Meas. Gas. Co. v. McCarty, 206 Ala. 588, 91 South. 383.

This bill seeks to declare void two contracts, one a paving contract and the other a contract to borrow money. The object of the suit is to cancel and annul these contracts; the object of the suit does not concern an estate of, or lien on, or charge upon, or a disposition of lands in this state in which the nonresidents are interested; and the object of the suit does not concern any interest in, title to, or incumberance on personal property within this state.

Did the cause of action arise in this state? The bill fails to allege where either contract was made and executed. Whether they or either of them were made and executed in the state of Tennessee or Alabama, or somewhere else, is not stated therein that we can find. The bill avers:

"On March 16, 1920, at a meeting of the city council of the city of Albany, W. M. Leftwich being present, it was agreed that the proposition theretofore made by the said Leftwich for the work under said ordinances, should be changed so that 'the price of all pavement laid according to D specification, including grading, stone base, and asphalt surface, be $1.50 per square yard,' and it was there further moved 'that the mayor and city clerk be and are hereby directed to enter into a contract with W. M. Leftwich Company of Nashville, Tenn., for the construction of said street work,' all of which were adopted at said meeting."

This avers "Leftwich being present" the "proposition theretofore made" by Leftwich for work under an ordinance should be changed. It avers the city council directed the mayor and clerk to enter into a contract with Leftwich of Nashville, Tenn., for the construction of the street work; but it does not aver where the mayor and the clerk and Leftwich entered into and executed the contract. This meeting of the city council was on March 16, 1920, and the contract entered into and sought to be annulled is executed and dated March 30, 1920, 14 days after the meeting. Their minds met in accord in the contract on March 30, 1920, but the record fails to aver where they were located at the time of its execution. This burden, to give the court jurisdiction of the subject-matter of the suit against the nonresident defendants, rested on the complainants to aver the contract was made and executed by the parties in the state of Alabama.

Were the acts, the alleged void contracts, on which the suit is founded, to have been performed in this state? There is no averment in the bill stating where the bank was to pay the money to the city of Albany under the contract. It does not appear from the complaint whether it was to be paid by the bank and received by the city in Alabama or Tennessee, or where. This burden rested on the complainants for it to clearly aver in the bill, if true, that under the contract the money was to be paid by the bank and received by the city of Albany in the state of Alabama, to give the court jurisdiction of the subject-matter when a nonresident defendant is interested in and party to the contract which complainants seek to annul. The bill shows that under the contract between the city of Albany and Leftwich, the streets to be paved were in the state of Alabama, but there is nothing showing, that we can find, that the contract price and money therefor was to be paid by the city to Leftwich in the state of Alabama, Tennessee, or where. The averments of the bill that the streets being paved under the Leftwich contract are located in Alabama would not give the court jurisdiction of the subject-matter under any clause of subdivision 2 of section 3054. The bill must aver that all the acts under the contract were or are to be performed in Alabama, in order to give the court jurisdiction of the subject-matter, when a nonresident is an interested party to the

contract to be annulled. This burden rests on the complainants. They failed to meet it. The complainants fail to aver facts in the bill to give the court jurisdiction of the subject-matter of this suit against the nonresident defendants under any one of the four classes of cases particularly permitted by the statute. Subdivision 2, § 3054, Code 1907.

The court has no jurisdiction of the persons of the nonresident defendants. The court has no jurisdiction of the subject-matter of the bill under the averments, unless the nonresidents appear and submit to the jurisdiction of the court or unless personal service of the suit is made on them. They have not been served with personal notice of the suit. They do not waive it; they appear specially to contest the jurisdiction of the court as to them personally and as to the subject-matter of the suit. The demurrers of each of the three defendants testing the jurisdiction of the court as to the persons of the nonresidents and as to the subject-matter of the suit as applicable to the nonresidents should have been sustained. Iron Age Pub. Co. v. West. U. Tel. Co., 83 Ala. 505, 3 South. 449, 3 Am. St. Rep. 758; Sec. 3045, Code 1907; Tigrett v. Taylor, 180 Ala. 296, 60 South. 858; Sayre v. Elyton Land Co., 73 Ala. 85; Treadaway v. Stansell, 203 Ala. 54, 82 South. 12; Long v. Clarke, 201 Ala. 454, 78 South. 832.

The bill as amended alleges facts on which they base the conclusion that the contracts are void and on which they request the court to annul them. The city of Albany also questions by its demurrers these facts; if they are true, it claims they are insufficient to render the contracts null and void. These questions raised by this defendant by demurrer are premature. They may never be reached. There are two nonresident defendants; they are interested as parties to one or the other of the contracts; they are not before the court on those questions raised by the city; the court has no jurisdiction now of these nonresidents; and then the bill of complaint as amended on its face does not contain a subject-matter over which the court has jurisdiction. If that question is ever reached, then the two nonresident defendants will have a right to be heard on it as well as the complainants and the city of Albany. Without jurisdiction of the persons of the nonresidents, which is indispensable, and without jurisdiction of the subject-matter of the suit, it would be premature, if not improper, to discuss the sufficiency or insufficiency of the facts, if true, to render the contracts null and void.

Each of the contracts calls for the performance of personal acts by all the parties to them. They are each property, choses in action; and neither is in possession or control of the court. The cancellation of neither can be accomplished, and the prevention of the performance of neither can be enjoined without the jurisdiction of the persons of all the contracting parties. Each contract could be canceled by decree in rem, if each contract, the property, was in the possession and control of the court. But without possession and control of the property, the contracts, both the cancellation of the contracts and the injunction to prevent their performance call for decrees in personam and not decrees in rem, which decrees cannot be rendered without personal jurisdiction of the contracting nonresident parties. There is nothing in the bill locating the contract. It does not indicate which of the parties has possession of it, and where it is. Each contract may be in the possession of the respective nonresident parties; there is nothing in the bill to the contrary by averments. From the bill the contracts do not appear to have been executed in duplicate, one to each contracting party. There appears to be one original, and it does not appear whether the originals are in the possession of the nonresident defendants in Tennessee or the resident defendant in Alabama.

[1] The foregoing expresses the opinion of the writer. The other six justices do not concur with him. The writer is of the opinion that the grounds of demurrer of each defendant indicated and held good by the foregoing opinion should have been sustained by the court. The other justices hold those grounds of demurrer were not well taken, and were properly overruled by the trial court. Under this ruling of the court, it is necessary for us now to discuss the other demurrers assigned by the city of Albany to the bill of complaint as amended.

The complainants claim the contract between the city of Albany and Leftwich is invalid and void, and that any expenditures or payments made thereunder will be illegal because:

"(a) The city was without authority to make one contract for the completion of the work provided for under six separate and distinct improvement ordinances, covering widely separated areas and calling for different kinds and grades of improvement, and where the price bid for furnishing and laying the materials (which was common in several of the different ordinances) also included the cost of grading, and the inevitable effect of which is to cause a property owner abutting on one improvement to share in or bear the cost of grading under another improvement. (b) The statutes under which said improvements are being made contemplate a separate contract for each improvement and do not authorize different improvements in widely separated areas to be made under one contract."

This was one contract under six ordinances for paving six separate streets, but it was not for a lump sum for all of the six streets or a lump sum for each of the streets. The

unit method was approved in the contract, and the cost price is shown by applying the unit contract prices to the quantity of work done on each street or part of a street under each ordinance. The unit contract prices for material furnished and labor performed in paving the streets under the ordinances are set out in full in the report of the case. It contains this statement:

"Excavation, without charge, it being understood that the cost of any excavation needed for any curbing, paving, etc., is included in the price paid for said curbing, paving," etc.

This contract provides:

"It is further agreed that the prices as herein listed shall be paid by the city and received by the contractor as full compensation for furnishing the materials and labor, and for use of tools, machinery, and other implements, and for labor and moving materials, and executing all the work contemplated in this contract."

The bill also alleges:

"That the work provided for by the said improvement ordinances is in part widely separated and disconnected and is from one to two miles apart, some being in West Albany, a part in South Central Albany, a part in East Albany, and a part in South Albany, and the topography of the land is altogether different, necessitating the grading of a portion of the streets under one ordinance in West Albany, to a depth of to wit, five feet, while the surface on some of said improvement, namely, Prospect Drive, along which complainants own abutting property for approximately a mile, is of even surface, requiring very little grading and under said ordinances specification D is common to both improvements, as well as others, and the cost of grading is included in the price made in said alleged contract for doing the work according to specification D, under all of the improvements using such specifications, inevitably necessitating one improvement bearing and sharing the cost of grading of another."

This contract is severable and divisible as to the cost price of the improvement on each street, and each abutting lot under the unit method agreed on by the parties. The following rule is laid down in 13 Corpus Juris, p. 563, on the subject of a divisible or severable contract:

"A test of severability which has frequently been applied is to the effect that, if the consideration is single, the contract is entire, but if the consideration is either expressly or by necessary implication apportioned the contract will be regarded as severable."

See, also, Kirkland v. Oates, 25 Ala. 465; Wolfe v. Parham, 18 Ala. 441; Leaird v. Davis, 17 Ala. 448; Barlow Mfg. Co. v. Stone, 200 Mass. 158, 86 N. E. 306.

[2] This being one contract executed for paving six separate streets under six separate ordinances would not in itself render it null and void, if the contract was so severable and divisible as to the cost and expenses of each street, so that the cost and expenses of all the works and improvements on each abutting lot on each separate street could be separately ascertained so it could be assessed against the property abutting on each respective street to the extent of not exceeding the increased value of such property by reason of the special benefits derived from such improvement. This is reasonable and proper, especially so in this case, when one contractor secures the contract for each street. Whether there shall be one contract for each street under each ordinance, or one contract for all the streets under all the respective ordinances, rests largely in the sound discretion of the municipal authorities, when there is no statute or ordinance to the contrary, as in this case, when it is severable and divisible as hereinbefore stated, and when no fraud or collusion is shown between the parties, and one person has the contract for all the streets. Section 1367, Code 1907; 4 McQuillin on Municipal Corporations, § 1913; Warren v. Barber Asphalt Co., 115 Mo. 572, 22 S. W. 490; Henderson v. City of Enterprise, 202 Ala. 277, 80 South. 115.

[3] This contract does not provide a price per cubic foot or per cubic yard for excavation. No price is fixed in the contract for grading and excavating. The cost for excavating and grading needed for curbs or paving any of the six streets "is included in the price" fixed in the contract "for the curb, paving," etc.

Some of the six streets under the allegations of the bill require no excavating, no grading, some streets and parts of streets require some and others none, varying in depth from one to five feet; and the costs and expenses of this excavating are included in, and will be assessed on, the property abutting streets which require no excavating.

This cost and expense of the improvements and paving by excavation on parts of some of the streets under the unit price contract cannot be separated from the cost and expenses on streets and parts of streets where there is no excavation or grading required. The costs and expenses of excavating the entire six streets are prorated under this unit contract and divided, and to be assessed on all the property abutting on all the streets. It is fixed in the curb and paving cost of each lot on each street, whether that lot or street requires any excavation or grading. It is so fixed in the curbing and paving prices on each lot on each street that it cannot be severed from the abutting property, requiring no paving, and placed only on the abutting property which requires paving, and under this unit contract there is no way to ascertain from the contract the cost and expenses of the grading and excavating, so it can be assessed only against the property abutting the streets which require the grading and excavating. In this way under this con-

tract some abutting property will be assessed more' and some assessed less than the cost and expense of the improvements and paving of each respective piece of the abutting property. The ordinance provides "no assessment shall exceed the cost of such improvement or the increased value of such property by reason of the special benefits derived from such improvement," and the statute allows only "the cost and expenses of all or any part of the aforesaid works and improvements to be assessed against the property abutting on said street * * * to the extent of the increased value of such property by reason of the special benefits derived from such improvements." Section 1359, Code 1907. Under this contract it is impossible to determine the cost and expenses of the pavement or improvements to each piece of property abutting the respective streets, so that a proper assessment can be made against it. This renders that part of the contract as to paving said streets under it, one not authorized by the ordinance and the statute. It was not within the power and authority of the city of Albany to make it, and gives the complainants the right to secure an injunction to enjoin its execution.

In City of Montgomery v. Barnett, 149 Ala. 124, 43 South. 94, this court said:

"But in the case now under consideration the contract is entire, so that it would be difficult, if not impossible, to tell what part of the price is for paving and what part for future maintenance. The ordinance treats the entire contract as the paving contract, and provides that the city council will proceed to issue the bonds to pay for the same. So far as the assessment is concerned, it may be true that, if the benefits should be found to be less than the actual cost, it would not increase the amount assessed, yet, if the benefits should be found to exceed the actual costs, it would affect the amount assessed, as the only limit then would be the actual cost, and, if that had been made more than it should have been, the property owner would have much more to pay than he was liable for. However, this bill is filed, not only in the capacity of abutting owners, but also as taxpayers, and under the authorities cited, which we think are supported by sound reason, it is a question of power, and the city has no power to make the contract and to use the money, the proceeds of the sale of the bonds, in the manner proposed by the ordinance. The taxpayer 'has the right to enjoin the same. 20 Am. & Eng. Ency. Law, p. 1231."

See, also, Decatur Land Co. v. City of Decatur, 198 Ala. 293, 73 South. 509.

[4] The complainants also claim the contract between the city of Albany and Leftwich is invalid and void because the mayor and the clerk were without authority to enter into said contract to pay $1.75 per square yard for pavement under specification D. Specification D is bituminous surfaced macadam pavement, at $1.75 per square yard.

The bill alleges the mayor and clerk were authorized by the city council to enter into a contract with Leftwich for all pavement laid on streets according to specification D, including grading, stone base, and asphalt, surface, at $1.50 per square yard, and they, contrary to instructions and without authority from the city council, entered into said contract with Leftwich for the pavement of streets under specification D at $1.75 per square yard. This increase from $1.50 to $1.75 was made by them without authority from the city council. This change in the authorized terms and price in the contract for this pavement was material. Some of the streets of the city are being paved under the contract under specification D at $1.75 per square yard. The city counsel are authorized to settle the terms and conditions, etc., of the pavement contracts under the statute, and they have the right to let the contract in the manner permitted by the statutes. The mayor and clerk in executing a pavement contract cannot change the price to be paid for it, fixed by the council and contractor, by increasing it, without authority from the city council. If they do, the contract is thereby invalidated. That part of the contract as to the pavement of streets under specification D having been increased from $1.50 to $1.75 per square yard in the contract by the mayor and clerk, without authority from the city council, is invalid, and can be canceled and its enforcement may be enjoined. Sections 1183, 1364, and 1367, Code 1907.

[5] The complainants also claim the contract is invalid because:

"The contract binds the contractor to maintain the pavement laid under specifications B, C, and F for a period of one year from final acceptance, and the cost of the maintenance is included in the bid for the construction of the pavement."

Section 91 of the specifications in regard to said guaranty is made part of the contract and reads in full as follows:

"91. *Guaranty of Other Pavements.* All pavements laid under specifications B, C, and F, will be guaranteed and maintained by the contractor for a period of one year from the date of final acceptance. The cost of this guaranty and maintenance will be included in the price bid for the construction of these pavements. As a guaranty that the contractor will replace any defective parts in these pavements within or at the close of one year from the date of their acceptance, he will make satisfactory surety bond to the city at the time of receiving his final payment for the completed contract in an amount equal to 5 per cent. of the cost to the city of said pavements. As soon after one year from date of final acceptance of the pavements all defects are repaired to conform to these specifications, and this fact is reported in writing to the city council by the city engineer, and guaranty and maintenance bond shall become void, but otherwise shall remain in full force and effect. Should the contractor fail to

make good any defects in pavements at the end of one year, the city shall have the right to repave said defects and levy the cost of same, including a fair charge for supervision, against the bondsmen making the guaranty bond."

Some of the pavements on the streets have been and are being laid under specification C, mentioned in said section 91. This cost under this contract is included in the cost contract price for the construction of the pavements on the streets, which is to be assessed against the property abutting. It is included in the contract price in such a way that it cannot be identified as to the amount, so it can be séparated and severed from the other contract cost price of the pavement. Then such cost and expense must be within the purview of the statute (section 1359), or the contract will be illegal as to the streets paved or to be paved under specifications mentioned in section 91. City Council of Montgomery v. Barnett, 149 Ala. 123, 43 South. 92.

[6] Written contracts must be read, considered, and construed in their entirety; from the whole of the contract, every word, every sentence must be looked at on the subject to gather the intent of the parties. Each sentence on the subject must be considered with all the other sentences on the same subject-matter to determine the true meaning of the contract. Bush E. L. & P. Co. v. City of Montgomery, 114 Ala. 433, headnote 1, 21 South. 960.

When section 91 of the specifications is read in its entirety, it seems clear the parties did not intend to contract for general repairs to the pavements or general maintenance of the paved streets mentioned for one year, but the contractor agreed to guarantee and maintain the work and material of the pavement, done and furnished by him under the contract, against his defective workmanship and his defective material furnished. This is permissible and proper, and seems to have been in the mind of the lawmakers when in section 1367, they wrote:

"And the said municipal authorities may by order impose further conditions upon bidders with regards to bonds and surety for the *faithful completion of such work, according to contract*, or for any other purpose mentioned in the specifications." (Italics supplied.)

[7] Such cost is included in the general cost and expense of the pavement. It adds no burden on the abutting property on the streets, not authorized and contemplated by the statute. Section 1359, Code 1907. The repair of defective workmanship and material adds nothing to the contractor's legal duty. This provision in the contract is not an obligation for general repairs, but for repairs for defective work or parts discovered or shown in the work or the material within a year after the contract is completed, and it is within the authority of the city

208 ALA.—9

to make such a pavement contract. However, if the contract guarantees general repairs from usual wear and common use for one year, without regard to defective workmanship or material, then it is not within the power of the city to include such costs in a pavement contract to be assessed against the abutting property on the street.

"Well-considered cases hold that, where a city is authorized to contract for paving its streets, it has no authority to incorporate in the contract an agreement for future maintenance." City of Montgomery v. Barnett, 149 Ala. 123, 43 South. 93.

However, this general rule has been established by the authorities, which we approved. In 4 McQuillin's Municipal Corporations, § 1912, headnote 46, p. 4119, is:

"It is generally held that a provision requiring the maintenance of the work as to repairs, made necessary by improper workmanship or by the inefficient quality of the material used to withstand the wear required of it, is, in effect, merely a guaranty of the quality of the work and is valid."

In section 829, p. 1260, 11 Municipal Corporations (5th Ed.) is this rule:

"If the repairs are limited to the making good imperfect work or the defective material used, no additional burden is imposed upon the abutting property owners by reason of a requirement of a guaranty for a term of years."

In 19 R. C. L. p. 1074, § 359, headnotes 12 and 13, is this rule:

"When, however, the contract is not a general one, to repair all defects in the work, however caused, but merely to repair defects due to defective workmanship or material, it is merely a guaranty of the quality of the work and is clearly unobjectionable, and the same has been held to be true even when the agreement to repair was general, if it covered only a period for which work if properly constructed would stand without repair, so that the provision is really merely 'a guaranty of proper construction."

The great weight of authorities sustains these rules. They are all cited in these volumes to sustain this position, but there are a few to the contrary.

This contractor, Leftwich, by section 91 obligated himself by contract and bond "to replace any defective parts in these pavements," and "to repair all defects to conform to these specifications * - * * within or at the close of one year from the date of acceptance" of the work of the paving. If the contractor "failed to make good any defects in pavements at the end of one year, the city shall have the right to repave said defects and levy cost of same * * * against the bondsmen, making the guaranty bond." These quotations from section 91 of the specifications clearly indicate this was a guaranty of his work and the quality of the material furnished by him for one year;

and this did not render the contract illegal. The authority to make such provisions in a contract gives the municipality the proper means of self-protection against defective work and material. 19 R. C. L. p. 1070, § 359, headnotes 12 and 13, and authorities cited; 11 Municipal Corporations (5th Ed.) § 829, p. 1261, headnote 1, and authorities cited; 4 McQuillin Municipal Corporations, p. 4119, § 1912, headnote 46, and authorities cited.

[8] The complainants also claim the Leftwich contract is invalid because:

"The contract provides that the grading under the said improvement ordinance shall include removal of all trees or other obstructions, and the contract binds the contractors to pay or secure all claims for damages of any kind caused by any act of his own employees."

This is a quotation from the allegations of the bill. The verbiage of the contract on that subject does not sustain it. These are clauses in the contract:

"*Protection of Property and Lives.* Measures shall be taken by the contractor to insure the safety of the public, by such precautions as to fencing, watching, and lighting as the emergencies of the case may call for. The contractor shall hold the city harmless for any damages to life, limb, or property that may arise or occur to any party whatever, either from accident or owing to his negligence or that of his employees during the operations of constructing or completing the work."

"*Claims against Contractor.* The contractor further agrees that he will indemnify and save harmless said city from all claims against parties for labor done and materials furnished under this contract and shall furnish satisfactory evidence, when called for by the city, that all persons who have done work or furnished materials under this contract for which the city may become liable, and all claims from private corporations or individuals for damage of any kind caused by any act, omission, or neglect of himself or of his employees during the construction of said work, have been fully paid or satisfactorily secured; and in such case evidence is not furnished, an amount necessary and sufficient to meet the claims of the persons aforesaid shall be retained from any moneys due, or that may become due the contractor under this contract, unless the liabilities shall be fully discharged or satisfactorily secured. The contractor further agrees that the city may retain out of any money due the contractor, sums sufficient to cover any unpaid claims of mechanics, laborers, or others for work performed or materials furnished under this contract, or for damages, provided that notice in writing of such claims signed by the claimants shall have been previously filed with said parties."

This neither increases nor diminishes the cost and expenses of the pavement to be assessed against the property abutting, as it adds no duty or liability on the contractor, except what is already placed on him by the law. This is a provision in the contract against the negligence of the contractor in the performance of his duties alone under the contract, and does not place on the contractor any liability in the performance of his paving contract which legally rests on the city of Albany. These clauses do not render the contract invalid. This provision in the contract is approved, rather than condemned, by the case of Inge v. Board of Public Works of Mobile, 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20.

[9] The complainants also claim the Leftwich contract is invalid because:

"Neither the quantity or price of the work to be done under the improvement on Sommerville road is fixed, but the city in said contract is to pay the contractor the cost of such work to him, plus 10 per cent. profit."

The Sommerville road from Gordon Drive to Prospect Drive was under the contract to be paved under and according to specification D, and "all other work on Sommerville road at cost plus 10 per cent."

Section 1367 of the Code of 1907 gives the city council the authority to—

"let the contract to make such improvement or improvements, and if no satisfactory bid is received the council may advertise for other bids, or may let the contract to a satisfactory bidder without further advertisement, or the city or town may itself construct such improvement, or furnish labor or material for the same."

Municipalities have the power to pave the streets of the city, and "within the limits prescribed to determine when, where, and how." Cramton v. City of Montgomery, 171 Ala. 478, 55 South. 122. The making of this contract for the paving of the Sommerville road rests in the sound discretion of the city council under section 1367 of the Code of 1907. Whether it exercised good or bad judgment in so doing, it is not for this court to decide. There are no facts alleging it was fraudulently made or that their discretion in making it was grossly abused, and complainants' property rights will be wrongfully injured thereby. This right to make and enter into this part of this contract rested in the sound discretion of the city of Albany. There is nothing in the record indicating its invalidity. Section 1367, Code 1907; Cramton v. City of Montgomery, 171 Ala. 478, 55 South. 122; Henderson v. City of Enterprise, 202 Ala. 277, 80 South. 115.

The decree of the court overruling the demurrers of the respondents to the bill of complaint, as amended, is affirmed.

Affirmed.

All the Justices concur, except GARDNER, J., who dissents.