# Cramton *v.* City of Montgomery, *et al.*

### *Bill to Enjoin Paving of Streets.*

(Decided April 13, 1911.' 55 South. 122.)

1. *Municipal Corporations; Ordinances; Validity; Misrepresentation.*—An ordinance otherwise valid cannot be impeached by evidence that the votes of the councilmen therefor were induced by misrepresentations of material facts, and by their erroneous beliefs with respect thereto.

2. *Same; Street Improvement; Injunctions.*—Where a city has a valid ordinance for the paving of streets, the paving or the letting of the contract therefor cannot be enjoined on the ground of want of durability of the contemplated pavement, its costs, or the difficulty or expenses of maintaining it.

3. *Same; Assessment; Statutory Remedy.*—Where one is threatened by an unjust or burdensome assessment as a result of the street improvement the statutes regulating assessments therefor furnish an ample remedy without resort to equity.

4. *Same; Expenses.*—The matter of costs and expenses in defending one's self at law against threatened, unjust or burdensome assessments for street improvement is not a ground for resort to equity. ·

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Bill by F. J. Cramton against the city of Montgomery and other to enjoin the paving, or the letting of a paving contract for certain streets in the city of Montgomery. From a decree for respondent complainant appeals. Affirmed.

BALL & SAMFORD, for appellant. The jurisdiction of the chancery court to grant relief against continuing trespasses and against nuisances is well established.— *So. Steel Co. v. Hopkins,* 157 Ala. 175; *Nixon v. Bolling,* 145 Ala. 277; *Deegan v. Neville,* 127 Ala. 471; *Ninninger v. Norwood,* 72 Ala. 277; 1 High on Injunctions, 697, 702, 702-a, and 715. The complainant is entitled to pre-

vent any change being made in his inheritance.—*Ferron v. VanSittart,* 1 Eng. R. & C. Cases; *Deegan v. Neville, supra..* The allegations of the bill support the theory upon which the injunctive relief is claimed.—26 Pa. St. 44; 64 Mich. 114; 13 Hun. 285; 162 N. Y. 278; 64 Cal. 62; 20 Kan. 47; 2 Joyce on Injunctions, 1125, et seq. As to the equity jurisdiction, see.—4 Pom. secs. 1850-1-1357.

C. P. McINTYRE, and HILL, HILL & WHITING, for appellee. The court was correct in holding that a mandatory injunction could not be granted until the final hearing.—22 Cyc. 743. Its granting rests in the sound discretion of the court.—22 Cyc. 746-7. As to when a preliminary injunction will not issue, see.—22 Cyc. 753, 4, 60, 63 and 64, 69, 774, 782-3, and 784-5. The mere averment that damages will be irreparable is not sufficient for an injunction to prevent trespass to land.—*Bolling v. Cook,* 104 Ala. 138; *Keller v. Burlington,* 101 Ala. 267. Courts are reluctant to enjoin cities in the matter of pavement.—*Strenner v. Montgomery,* 86 Ala. 340.

SOMERVILLE, J.—The appellant, F. J. Cramton, filed his bill in the city court, praying for a temporary writ of injunction restraining the city of Montgomery from paving or entering into a contract to pave a certain portion of Madison avenue, in the city of Montgomery, lying east of Hillard street and abutting on complainant's lands on both sides thereof. Complainant further prays that on final hearing the injunction be made perpetual. The application was set down for hearing under the statute, and on hearing the chancellor rendered a decree, denying the writ and withdrawing the temporary order previously granted. From this decree, complain-

ant prosecuted an appeal to this court under section 4531 of the Code of 1907.

In support of the prayer for the temporary writ, the bill shows the following facts and conditions:

1. That section of Madison avenue, the paving of which is sought to be enjoined, consists of a fill or embankment constructed by the city in grading the street. This embankment is from 12 to 25 feet higher than complainant's abutting lands, with a frontage of 363 feet on one side, and 433 feet on the other. The road surface of the embankment is 50 feet wide, whence it slopes on each side about 25 feet to the property line, and from the property line the soil of the embankment slopes continuously out on complainant's lands; the encroachment being about 36 feet wide near the center, with a circular graduation towards either end.

2. That part of the embankment spreading over complainant's lands, as well as that lying within the street, was placed there by the city, and constitutes a continuing trespass upon complainant's property, which he has a right to remove or to have removed, and he prays in the bill that on final hearing the city be compelled by a mandatory writ to remove from the lands all of the foreign material thus wrongfully placed there.

3. As the embankment now stands within the street, it unlawfully imposes upon complaintant's lands the service of lateral support; and, if a pavement be laid on the street, this lateral pressure and burden will be greatly increased, to such an extent that, when the adjacent soil is removed as prayed, the embankment will crumble from its sides and collapse, and the paving be thereby destroyed, and the labor and expense thereof to the city and abutting owners will be a complete loss.

4. The pavement is not needed and is not really planned for the benefit of the public, but only for the advantage of property owners further out.

5. If the cost be assessed on the abutting property, it will impose a heavy and unjust burden on the owners thereof, without corresponding benefit.

6. The ordinance ordering the paving in question is invalid, because the affirmative votes of several councilmen were induced by a misstatement as to the attitude of certain property owners interested; their votes being decisive of the passage of the ordinance.

From the foregoing synopsis of the bill of complaint, it is readily apparent that the complainant is suing as a citizen of Montgomery, as a private property owner; and that, *as a citizen,* he claims the right to prevent the paving, or the making of a contract to pave, on the ground (1) of the invalidity of the ordinance ordering the improvement, and (2) of the unwisdom and improvidence of constructing an improvement which he, as a property owner, may and will lawfully destroy and render valueless by the withdrawal of necessary lateral support; and, as a *private property owner,* he claims the right to prevent the paving on the ground (1) of the invalidity of the ordinance, and (2) of the injustice of the assessment that will follow, and the expense to him of resisting it. And, in this latter capacity also, he claims the right to have his land freed from the encroachment of the superimposed soil which furnishes lateral support to the embankment in the street.

The application for the temporary writ of injunction relates only to the paving, or making of a contract to pave, and with this question alone are we concerned on this appeal. It is therefore obvious at a glance that in this respect the equity of the bill.—complainant's right to prevent the city of Montgomery from paving or contracting to pave the specified section of Madison avenue —depends upon whether or not this court can pronounce invalid a municipal improvement ordinance regularly

31—171

enacted within the prescribed field of municipal action, because the affirmative votes of councilmen necessary to its passage were induced by misrepresentations to them of material facts, and their erroneous beliefs with respect thereto, without which they would have voted adversely, resulting in the defeat of the ordinance; or whether this court can control the legislative discretion confided by law to a municipal council with respect to the improvement of municipal highways, either because it is unwise and wasteful of public funds, or because it is unjustly burdensome to an abutting property owner.

1.　As to the first of these two proposition, the rule is, we believe, universal and undisputed that an otherwise valid ordinance cannot be thus impeached. "It is a settled rule of conduct, prescribed by the courts for their own government, that they will not inquire into the motives of the Legislature in eacting laws. And by analogy to this rule it is very generally held that the courts cannot inquire into the motives of members of a municipal council for the purpose of determining the validity of ordinances enacted by them."—28 Cyc. 375, and cases cited. An exception in the case of corruption is recognized in a few cases, though even this is contrary to the great weight of authority. We approve the rule as above quoted, and as already declared by us in the case of *Albes v. So. Ry. Co.*, 164 Ala. 356, 51 South. 327.

2.　In considering complainant's second proposition, it is of course, to be remembered that the equity asserted must stand upon its own merits, and can borrow none from other sources. Hence, whether or not the placing of foreign materials on complainant's lands adjacent to and continuous with the street embankment is a continuing wrong, from which he will ultimately be re-

lieved, and as to which his bill contains equity, is a question wholly immaterial to the issue here presented.

Under powers granted by the Legislature to municipalities, the city of Montgomery has the undoubted power to pave its streets, and, within the limits prescribed to determine when, where, and how. And, when it has exercised this legislative discretion by a valid ordinance, it may proced to make a contract for the execution of its lawful plans, and to assess the cost thereof on abutting property, to the extent of its enhanced value.

Under these conditions the rule is well settled that "courts have no jurisdiction to substitute their judgment for that of the municipal body, or interfere with the act or undertaking, because it is not consistent with the judicial reasoning or policy."—28 Cyc. 282, and authorities cited. And this court has declared that "a court of equity does not generally look with favor on bills to prevent the enforcement of municipal ordinances, nor concern itself with iregularities in municipal procedure."—*Cuba v. Miss. Cotton Oil Co.,* 150 Ala. 262, 43 South. 707. And, answering one of the contentions made in this bill, it was elsewhere said: "There is no merit in the question raised by the bill that the authority granted by the Legislature to pave the streets of the city involved a considerable outlay, and in the event of a failure to collect the assessments against the abutting property it would have to be met out of the general revenues of the city. * * * These are matters peculiarly within the control of the Legislature, when not restricted by constitutional provision, and the courts have no right to interfere."—*Inge v. Mobile,* 135 Ala. 187, 204, 33 South. 678, 683, 93 Am. St. Rep. 20.

[Cramton v. City of Montgomery, et al.]

So, in the present case, the durability of the contemplated pavement, its cost, and the difficulty or expense of its maintenance, are all questions purely of legislative policy and discretion, which a court of chancery cannot supervise or control. Even on the face of the bill, the extent to which the embankment on which the pavement is to be laid may crumble or wash away is manifestly conjectural; and, even so, the bill itself suggests a remedy, viz., a retaining wall, the expense of which, so far as appears, may be neither considerable nor impolitic, to say nothing of the recourse of condemnation under eminent domain. Nor could it be presumed that the city government would fail in its duty by all lawful and reasonable means to protect and preserve a public improvement so important and expensive as this. If it were necessary to be determined, the affidavits on file amply establish the utility, if not the necessity, of the pavement as ordained, but under our view of the case the fact is not here in issue.

In so far as complainant may be threatened with an unjust or burdensome assessment upon his property, as a result of the improvement to the street, it is sufficient to say that the statutes regulating the anticipated assessment offer him full opportunity to resist injustice and avail himself of all his rights without a resort to equity.

And we need hardly add that the specter of costs and expenses that may be incurred by complainant in defending himself at law can hardly be regarded as a good ground for transferring his cause to chancery, where the same evil is sure to folow him, with probable aggravation.

We concur in the views and conclusions of the chancellor in denying the temporary writ of injunction, and the decree of the city court is affirmed.

Affirmed.

SIMPSON, MCCLELLAN, and MAYFIELD, JJ., concur.