(96 South. 444)

**DUNN CONST. CO. v. WHITE.   (6 Div. 746.)**

(Supreme Court of Alabama.    April 5, 1923. Rehearing Denied May 10, 1923.)

**1. Highways ⬤══130½, New, vol. 12A Key-No. Series—Evidence held to show formal paving contract invalid as amounting to alteration of the contract awarded, etc.**

Evidence *held* to show that a formal paving contract as finally executed was invalid as amounting to an alteration of the contract awarded as to the cost price, as well as in effect a sale of bonds under par in violation of law, and therefore a material departure from the contract awarded and a private contract prohibited by Gen. Acts 1915, p. 576, § 11, requiring advertisement and award of contracts to the lowest bidder.

**2. Judgment ⬤══572(2)—Decree sustaining demurrer without further order not a "final decree."**

A decree sustaining a demurrer, without further order disposing of a cause, is not a "final decree."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill for injunction by William L. White against the Board of Revenue of Jefferson County and the Dunn Construction Company. From a decree for complainant, defendant Dunn Construction Company appeals. Affirmed.

Tillman, Bradley & Baldwin and Dunn & Boyle, all of Birmingham, for appellant.

The written proposal of the Dunn Company, submitted to the board of revenue April 28, 1920, to construct the North Bessemer road, project No. 1–A, according to the specifications prepared therefor, and the acceptance of said proposal by the board of revenue on May 3, 1920, constituted a complete contract. Sturdivant v. Mt. Dixie Co., 197 Ala. 280, 72 South. 502; Hodges v. Sublett, 91 Ala. 588, 8 South. 800; 13 C. J. p. 289; 6 R. C. L. p. 618; Elliott on Contracts, § 63. The contract agreement, executed by the Dunn Company in May, 1920, having thereafter been executed by the county, by the president of the board of revenue, as authorized by the resolutions of September 27, 1921, and having been again executed by the Dunn Company, and dated October 14, 1921, became a memorial of the contract originally entered into, as modified by subsequent agreement with reference to extension of time for performance. Sou. Ry. Co. v. Huntsville, etc., 191 Ala. 333, 337, 67 South. 695; 13 C. J. p. 289; 6 R. C. L. p. 618; Elliott on Contracts, vol. 1, § 63. The county, through its said board of revenue, had the right to modify said road contract. New Farley Nat. Bank v. Montgomery Co., 17 Ala. App. 297, 85 South. 31; Montgomery Co. v. New Farley Nat. Bank, 200 Ala. 170, 75 South. 918; Brown v. Lowndes County, 201 Ala. 437, 78 South. 815. If the resolution adopted by the board on December 10, 1920, constituted a breach of said contract by the board, then the Dunn Company had the right to waive said breach, and a waiver thereof did not discharge the county. Andrews, etc., v, Tucker, 127 Ala. 602, 29 South. 34; 3 Elliott on Contracts, § 2050; 6 R. C. L. p. 1022; 13 C. J. pp. 670, 671; 2 Williston on Contracts, p. 1637; Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828; Bare v. Victoria Coal Co., 73 W. Va., 632, 80 S. E. 941; Canada, etc., Co. v. Flanders, 165 Fed. 321, 91 C. C. A. 307; Farrelly v. U. S., 159

Fed. 671, 86 C. C. A. 539; Crabtree v. Hagenbaugh, 25 Ill. 233, 79 Am. Dec. 324. When a demurrer admits all the facts which are well pleaded, the judgment therein is conclusive, even when party allowed leave to amend fails to do so. Terrell v. Nelson, 199 Ala. 436, 74 South. 929; State ex rel. Knox v. Dillard. 196 Ala. 539, 72 South. 56; Keown v. Keown, 231 Mass. 404, 121 N. E. 153; Bissell v. Spring Valley, 124 U. S. 225, 8 Sup. St. 495, 31 L. Ed. 411.; Perkins v. Moore, 16 Ala. 17; People v. Harrison, 253 Ill. 625, 97 N. E. 1092, Ann. Cas. 1913A, 539; City Council v. Walker, 154 Ala. 242, 45 South. 586, 129 Am. St. Rep. 54. Bonds authorized for the construction of public work may be lawfully sold to the person having the contract to do said work. Ogg v. Dies (Tex. Civ. App.) 176 S. W. 638; 15 C. J. 628.

Percy, Benners & Burr, of Birmingham, for appellee.

The contract of October, 1921, contained a consideration not contained in the original contract. and may be enjoined at the suit of a taxpayer. Acts 1915, p. 573; Inge v. Board of Public Works, 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20; Montgomery v. Barnett, 149 Ala. 119, 43 South. 92. The contract of April, 1920, was not complete until the formal contract was signed. Central Bit. Pav. Co. v. Highland Park, 164 Mich. 223, 129 N. W. 46, Ann. Cas. 1912B, 719; Bissinger v. Prince. 117 Ala. 484, 23 South. 67. The Webb Case did not proceed to final decree, and is not res judicata in this case. Authorities cited by appellant to the contrary are inapt.

GARDNER, J. This is a suit by appellee, as a resident taxpayer of Jefferson county, against the board of revenue of said county and the Dunn Construction Company, seeking injunctive relief against the enforcement of a certain road contract entered into between the respondents. Upon submission of the cause for final decree upon pleadings and proof, the chancellor awarded the relief prayed for by complainant, and from this decree the respondent Dunn Construction Company has prosecuted this appeal.

[1] A detailed outline of all the facts appearing in this record need not be stated, but brief reference will be made to those facts which we consider essential and of controlling importance upon this appeal.

Prior to April, 1920, an issue of road bonds of Jefferson county in the sum of $5,000,000 had been authorized by the voters. The law expressly provided that these bonds could not be sold below par, and litigation concerning this issue appears reported in the cases of Weakley v. Henry, 204 Ala. 463, 86 South. 46, and Wallace v. Ball, 205 Ala. 623, 88 South. 442. After due advertisement bids were submitted on March 22, 1920, for the purchase of $2,000,000 of these bonds. The Alabama Bond Company's bid being accepted, the bonds were awarded to it by resolution of the board of revenue on April 2, 1920.

Evidently anticipating the proceeds from the sale of these bonds, the board of revenue, on March 26, 1920, adopted a resolution authorizing the county engineer to advertise that bids would be received until noon of April 28, 1920, for the construction and rebuilding of 21 public roads, referred to as "projects"; the road known as the North Bessemer road, the construction of which is involved in this litigation, being designated as project No. 1-A. The Dunn Construction Company submitted bids for nine of these projects, and submitted a bidder's bond. While the minutes of the board of revenue do not contain a formally worded motion or resolution accepting the bid of the Dunn Construction Company, the records of said board do show that an "X" was placed after the amount of the Dunn Construction Company's bid, and an asterisk after its name and the amounts of its bid—all of which is shown to mean that the Dunn Construction Company was the lowest bidder, and that its bid had been accepted. According to this proof, therefore, the Dunn Company's bid shows project No. 1-A, which was for a paved road, was accepted, and also its bid for three other projects, which need not be described; this appears of May 3, 1920.

There was some delay in furnishing the form of contract to be executed, but it appears that in May, 1920, the Dunn Construction Company executed the contract furnished by the county engineer and delivered the bonds. Omitting a reference to the question of maintenance and the difference in the amount occasioned thereby, the amount of the bid we place at approximately $394,000. The contract was delivered to the president of the board for his signature, but he declined to sign for the reason it appeared the Alabama Bond Company had refused to take the bonds sold to it. It further appears that within some 60 or 90 days thereafter the bonds which had been delivered to the board by the Dunn Company were returned to the latter.

The evidence tends to show that after the Dunn Construction Company had been notified of the acceptance of its bid it made preparation for beginning the work, having contracted for some of the material, and let a subcontract to the Taylor Construction Company for clearing the ground; but further work was stopped by the county engineer upon information that the Alabama Bond Company had refused to take the bonds. The board of revenue made further efforts to find a purchaser for these bonds—the cases above referred to containing much of the history—but all these efforts were without avail.

On December 10, 1920, the board adopted

a resolution to the effect that all outstanding contracts for road building, which had never been completed or signed, be annulled. Upon the Dunn Company learning of this, it protested and was told that this resolution was adopted at the suggestion of the state examiners for the reason that as the records appear these contracts would have to be charged up as a liability to the county.

The Dunn Construction Company offered proof to show that during the entire period of this delay it was ready, able, and willing to perform the contract, and anxious to do so. Under this contract the road was to have been completed by January 1, 1921. A number of other bids, made at the same time as the Dunn Company's bid, were also accepted; but work under them was never begun. The county was not in strong financial condition, and it very clearly appears that all parties at the time these bids were submitted and accepted well knew and understood that these projects were to be financed from the proceeds of the road bonds.

The evidence shows, without dispute, that after January, 1921, the cost of road construction began to decline, and that in the fall of that year the particular road project here involved could have been constructed at a cost of approximately 25 per cent. less than the bid price of April, 1920. The Dunn Company was persistent, and its representative frequently saw some member of the board in reference to carrying out this contract.

It is insisted by counsel for appellant that the minutes showed the bid of the Dunn Company as having been accepted, and therefore this was a completed contract, citing Sturdivant v. Mt. Dixie S. L. & I. Co., 197 Ala. 280, 72 South. 502; So. Ry. Co. v. Huntsville Lbr. Co., 191 Ala. 333, 67 South. 695. We consider it unnecessary to determine whether under the facts of this particular case the contract was considered by the parties as fully completed; but we are rather inclined to the view that it was expected that all parties would sign a formal contract. Bitulithic Pav. Co. v. Highland Park, 164 Mich. 223, 129 N. W. 46, Ann. Cas. 1912B, 719.

It appears, however, that subsequently on September 27, 1921, the board of revenue recognized the binding force and effect of the contract with the Dunn Construction Company, and authorized its formal execution by the president of the board, repealing the resolution of December 10, 1920, and in consideration of which the Dunn Company agreed to release the county from all claims and demands arising from the failure of the county to theretofore perform the contract. This resolution further provided that the Dunn Company should begin work within 10 days after being notified in writing by the board that the board has on deposit suffi-

cient cash proceeds from the sale of bonds issued for road construction work with which to pay estimates for said work, and the Dunn Company was to be allowed 20 months from the beginning of the work in which to complete the contract.

After the adoption of this resolution, one Webb, a citizen and taxpayer of Jefferson county, filed a bill in the circuit court of that county against the board of revenue and its members, seeking an injunction against the completion of any contract contemplated by said resolution. The Dunn Construction Company was not a party to that litigation, but the board of revenue filed a demurrer to the bill, and on October 10th a decree was rendered sustaining this demurrer, and allowing complainant three days in which to amend, which complainant failed to do.

After the Webb case was disposed of, and on October 14, 1921, a formal contract was entered into between the board of revenue and the Dunn Construction Company for the construction of project No. 1–A, containing the same specifications as of that of April 2, 1920, and, in all respects, practically the same contract, except as to the time to begin work and the time for the completion thereof, the sum to be paid being the same as that of the former bid, and another performance bond in the sum of $394,000 was executed and delivered by the Dunn Company to the board.

It further appears that, after the Webb case was disposed of, a representative of the Dunn Company saw the president of the board about resuming work on this road project, but was informed that before the work could be resumed the bonds must be sold, and the Dunn Construction Company offered its assistance in the sale of these bonds. On December 2, 1921, the board adopted a resolution inviting bids for $425,000 for these 5 per cent. bonds. The Dunn Construction Company bid par and accrued interest, but this bid was refused by the board; notwithstanding it appears practically without dispute that there was no market for these bonds at par. Several conferences were then held between the Dunn Construction Company's representative and the board of revenue, and it was quite evident that the reason for the refusal of the bid was that some of the members of the board were of the opinion the original cost price for the road was too high, as the cost of building roads had declined. Mr. Dunn, speaking to this question, testified:

"Some members of the board of revenue claimed that the cost of building roads had declined, which we denied, but they insisted that we either give them a premium on the bonds or revise the prices in our contract."

It was finally agreed that the Dunn Company would bid for the bonds $107, with ac-

crued interest, taking the sum of $394,000, par value. The delivery of the bonds was to be made in monthly installments; but the bid was accompanied with a letter in which it was stated that this offer was upon condition that the county would faithfully perform the contract between it and the Dunn Company for the construction of the north Bessemer road, project No. 1–A. and that the proceeds of said amount of bonds would be applied under the terms of said contract to the extent necessary in payment for the work done thereunder.

The contract of October 14, 1921, contained a provision for the Dunn Company to begin work when notified by the board that the county had on deposit sufficient cash proceeds from the sale of bonds issued for road construction work with which to pay the estimates for said work.

Counsel for appellant insists that a binding contract was entered into between the Dunn Construction Company and the county in April, 1920, for the construction of this particular road; that work was begun thereon, and further delay was caused by the county; and that the contract of October, 1921, was but a recognition of the same contract of April, 1920, with only a change as to the time of work and extension of time for the completion thereof; that if there has been a breach by the county, it was a matter which could have been waived by the Dunn Company, and which was waived. But we are persuaded that all these insistences as applicable to this case overlook the principle underlying contracts of this character. Under the provisions of section 11 of the act approved September 22, 1915 (Gen. Acts 1915, p. 573), contracts of this character could only be let to the lowest reasonable and responsible bidder for such work, after due advertisement in the public press, as therein provided. Such provisions are for the purpose of securing, by competitive bidding, the lowest reasonable price, and likewise to prevent anything like favoritism on the part of the officials, and to secure fairness in the bidding. Speaking to this question in Inge v. Board of Public Works, 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20, the court said:

"The basis of the bidding and the contract entered into should be the same, for otherwise the very object and purpose of the law in calling for competitive bidding might be thwarted. 'To require the bids upon one basis and award the contract upon another would, in practical effect, be an abandonment of all bids.' Wickwire v. City of Elkhart, 43 N. E. Rep. (Ind.) 218; to the same effect, People v. Board of Improvement, 43 N. Y. 229; Shaw v. City of Trenton, 49 N. J. Law, 339. Any material departure in the contract awarded from the terms and conditions upon which the bidding is had, renders the contract, in a sense, a private one. To permit such in the awarding of public contracts by public officers, would be to open wide the door for favoritism, and defeat the thing which the law intended to safeguard in requiring the contracts to be let upon bids made on advertised specifications. It is unimportant whether the additional stipulation contained in the contract awarded to one, who is not the lowest responsible bidder, be in itself an advantage to the city or not, if it constitutes a material change, and, therefore, a departure from the basis of the bidding, and becomes an element or consideration in the determination of who is the lowest and best bidder, it will invalidate the contract entered into."

Application of this principle to the case as here presented, we think, fully justifies the lower court in the decree rendered. While the contract of October, 1921, was the same as to the amount of the bid, and the specifications as to material and workmanship, yet we are persuaded that additional and different considerations entered into it from the contract of April, 1920. The 1920 bid contemplated the payment for the work in cash out of the proceeds of the bond sale, and the contract of October, 1921, contemplates, in effect, payment for the work in 5 per cent. bonds of the county, and it matters not that the bonds should be actually bought and paid for by the Dunn Company, for the agreement clearly contemplates an immediate repayment of the proceeds to the Dunn Company in payment of the contract. Looking through form to substance therefore, the agreement finally entered into was nothing more or less than a payment for the work in the county bonds.

This contract was also based upon a further consideration, as clearly appears from the proof, that the Dunn Company should release its claim for damages growing out of the delay in this particular project, as well as for an alleged breach of contract as to the other bids which had been accepted.

The contract of October, 1921, was the result of private conferences. There was no readvertisement or other bidding required. The cost of construction had declined 25 per cent. at that time, amounting in this particular case to approximately $100,000; the premium to be paid for the bonds amounted to $27,580. The uncontradicted proof discloses there was no market for these bonds even at par, and that this premium was agreed to be paid merely in answer to the objection of some member of the board that the contract of 1920 was entirely too high as compared with the cost of construction in 1921.

We take no issue with the able brief of counsel for appellant upon the propositions of law as applicable to ordinary cases of contract as between private individuals, but, as previously stated, the underlying principle of the Inge Case, supra, differentiates the

situation here presented from those authorities, and, in our opinion, is conclusive against the validity of the arrangement here entered into and sought to be enforced.

The record shows that the county subsequently obtained authority for the issuance of 6 per cent. bonds in order that a market might be found at par; and the argument is made that all these matters must be considered as tending to show that, notwithstanding the decrease in the cost of construction, the county had made a fairly good trade after all. This fact, however, can have no bearing upon the legal question here presented. As we view the evidence, it amounts to an alteration of the contract of 1920 as to the cost price, as well as in effect a sale of the bonds under par. The contract of 1921 was therefore a material departure from that of 1920, and was in fact a private contract prohibited by section 11 of the above cited act. A reference to the local acts of Jefferson county (Terry's Local Laws of Jefferson County, p. 625), discloses no conflict with any of its provisions, and that of section 11 of the General Acts of 1915, supra, in respect to any question here involved. And, indeed, it is not here insisted by counsel for appellant that the Inge Case, above cited, is without application on that account.

[2] We have heretofore referred to the fact that after the adoption of the resolution of September 27, 1921, one Webb filed a bill against the board of revenue, seeking an injunction against the enforcement of the contract therein contemplated. A demurrer was interposed, which was sustained, and complainant allowed three days in which to amend, which was not done; and the Webb case is here pleaded as res judicata. Aside from other considerations, which need not be stated, the plea of res judicata is not sustained by the proof, as it is nowhere made to appear there has been any final disposition of that cause. In Rose v. Gibson, 71 Ala. 35, is the following:

"A decree simply sustaining a demurrer without further order disposing of the cause is not a final decree."

See, also, Ex parte Dunlap, ante, p. 453, 96 South. 441, and authorities there cited.

The foregoing discussion of the case sufficiently discloses our conclusion that the evidence as to the decreased cost of construction was material and relevant, and that the objections thereto were properly overruled.

It results that, in our opinion, the decree of the court below is correct, and will be here accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.