### VAN ANTWERP et al. v. BOARD OF COM'RS OF CITY OF MOBILE et al. (I Div. 454.)

Supreme Court of Alabama. Jan. 19, 1928.

**1. Municipal corporations ⚖⟹241—When competitive bidding is selected as method of letting contract, it must be awarded to lowest responsible bidder complying with regulations (Code 1923, § 1911).**

While it is open to corporate authority, under Code 1923, § 1911, to adopt method of letting contract as therein provided or to let contracts in manner deemed best under conditions, where competitive bidding is selected as method of letting contract it must be awarded to lowest responsible bidder complying with regulations prescribed before bids are called for.

**2. Municipal corporations ⚖⟹237—Bidders on municipal contract must have opportunity to bid on same thing.**

As essential to competitive bidding on contract with municipality, all bidders must have an opportunity to bid on the same thing.

**3. Municipal corporations ⚖⟹237—Where bids are called for based on bidders' specifications, bidding is not competitive within statutes; "competitive bidding" (Code 1923, § 1911).**

When bids for municipal contract are called for from manufacturers of different types of plants based on their own specifications, and necessity arises to determine fitness to needs of city and which is better bid, it is not competitive bidding, within meaning of Code 1923, § 1911, requiring awarding of contract to lowest bidder.

**4. Municipal corporations ⚖⟹237 — Where awarding contract on competitive bids is not mandatory, city may invite bids on basis it deems best, reserving power to reject (Code 1923, § 1911).**

Since in Code 1923, § 1911, there is no mandatory requirement for letting municipal contracts on competitive bids, city may invite bids on basis it deems best, reserving power to reject all bids or let contract to bidder submitting most desirable proposal.

**5. Municipal corporations ⚖⟹237—If invitation for bids is mere call for proposals based on bidders' specifications, contract is referable to discretionary power to invite proposals (Code 1923, § 1911).**

If invitation for bids by municipality is not on proper basis for competitive bidding, but is call for proposals based on bidders' specifications, contract is not within Code 1923, § 1911, but is referable to discretionary power to invite proposals subject to right to reject all and enter into private negotiations.

**6. Municipal corporations ⚖⟹235—In absence of controlling statute, ordinance providing for awarding contracts on competitive bids does not prohibit making of contracts by other methods.**

In absence of statute requiring ordinance defining manner of letting contracts, ordinance providing that in certain cases contracts shall be awarded on competitive bids does not limit power to make future contracts by other methods.

**7. Municipal corporations ⚖⟹244(2)—Unless statutes require contracts to be authorized by ordinance, resolution approving and directing execution of contract is sufficient authorization.**

Unless statutes require contracts of municipality to be authorized by ordinance, proper resolution of governing body identifying, approving, and directing execution of contract is sufficient authorization.

**8. Municipal corporations ⚖⟹244(2)—Letting contract on bidders' specifications is not within requirement that contract be awarded except by resolution or ordinance of permanent nature (Code 1923, § 1993).**

Letting of a contract for construction of an incinerator by municipality on bids in which bidders detailed their own plans and specifications with their proposals is not within terms of Code 1923, § 1993, requiring that council shall not award contract on bids except by resolution or ordinance of permanent nature, only effect of amendment thereto being to bring resolution awarding contracts required to be on competitive bids and so awarded within definition of resolution of permanent operation.

**9. Municipal corporations ⚖⟹244(2)—That contract was executed before resolution authorizing it was recorded was immaterial, where it became effective when resolution was recorded (Acts 1911, p. 337, § 8).**

That contract for incinerator was executed on behalf of city by mayor thereof and manufacturer before resolution authorizing it was recorded, as required by Acts 1911, p. 337, § 8, was immaterial, since contract could have been

---

⚖⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

made effective after recordation of resolution by re-signing and redelivery and did become effective when resolution was put on record.

**10. Municipal corporations ⟨key⟩244(1)—Stipulation that contractor supplying incinerator should carry workmen's compensation insurance was properly part of contract.**

Plenary power to make construction contracts for authorized city purposes implies power to incorporate provisions as are incident to work conducted in customary and businesslike way, and hence in letting of contract to supply incinerator to city parties could stipulate that contractor carry workmen's compensation insurance.

**11. Municipal corporations ⟨key⟩244(1)—That installation of incinerator was to be on cost-plus basis held not to render contract invalid.**

Where manufacturer was awarded contract for $50,000 for furnaces of an incinerator and labor and material for installation on basis of cost plus 10 per cent., not to exceed total cost of $84,500, that work of installation was to be done on a cost-plus basis did not render contract invalid.

**12. Municipal corporations ⟨key⟩244(1)—Contract for incinerator partly on cost-plus basis for installation, not illegal nor infected with fraud, was within discretion of city authorities.**

Contract for incinerator at named price for furnaces and for installation on cost-plus basis not to exceed a total named price, not being illegal in itself nor infected with fraud, *held* within discretion of city authorities.

**13. Equity ⟨key⟩239—On demurrer, averments of bill are taken as true.**

On demurrer, the averments of a bill must be taken as true.

**14. Municipal corporations ⟨key⟩63(1)—Municipality making contracts for municipal plants within charter power acts in quasi legislative capacity in exercise of legislative discretion.**

Since governing body of municipality is vested with legislative, judicial, and administrative powers, in making contracts for municipal plants for public safety and convenience within charter powers they act in quasi legislative capacity, and when so acting on subject-matter committed to them and proceeding legally a legislative discretion is vested in them.

**15. Municipal corporations ⟨key⟩63(1)—In passing on contracts executed by municipality in exercise of discretion, courts deal only with question of legality.**

In passing on contracts executed by municipality for municipal plants for public safety and convenience and in letting of which municipality exercises legislative discretion vested in them, courts deal only with question of legality of contract.

**16. Municipal corporations ⟨key⟩63(1)—Courts cannot interfere with discretion vested in governing body of municipality.**

Courts cannot and will not interfere with discretion vested in governing body of a municipality.

**17. Municipal corporations ⟨key⟩63(1)—Courts will not interfere to enjoin letting of municipal contract except for corruption or "fraud."**

Courts will not interfere by injunction with a municipal contract in which municipal authorities are invested with discretion in letting of, except in case of corruption, fraud, or "bad faith," the equivalent of fraud.

**18. Municipal corporations ⟨key⟩63(1)—"Arbitrary action" of municipal authorities in letting contract is not abuse of discretion for which relief is warranted.**

"Arbitrary action," which is action based on no sound basis of reason, but expressive of will to rule without regard to public interests involved, and has element of bad faith, is not such abuse of discretion by municipal authorities as will warrant relief in the courts.

**19. Municipal corporations ⟨key⟩63(1)—Where merit of rival incinerators was within discretion of city commissioners, court will not examine into merits of individual bidders' products.**

Where in letting of contract for municipal incinerator merit of products of two rival manufacturers was within discretion of municipal authorities, in passing on bill to enjoin letting of contract to successful bidder, court will not usurp function of municipal authorities which would require it to pass on relative merits of products of rival manufacturers.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Bill in equity by J. C. Van Antwerp and others against the Board of Commissioners of the City of Mobile, the members thereof, and the Superior Incinerator Company of Texas, to annul and enjoin performance of a contract between the City of Mobile and said Superior Incinerator Company of Texas. From a decree sustaining the demurrer to the bill, complainants appeal. Affirmed.

Smiths, Young & Johnston, of Mobile, for appellants.

When the city commissioners advertised for competitive bids and bids were made pursuant to the advertisement, it became the duty of the board to let the contract to the lowest responsible bidder. Code 1923, § 1911. The board was under duty to exercise a fair and reasonable discretion in awarding the contract. Albany v. Spragins, 208 Ala. 130, 93 So. 803; Schefbauer v. Board, etc., 57 N. J. Law, 588, 31 A. 459. Where the statutes prescribe a particular method to be followed in entering into municipal contracts, the statute must be strictly complied with, and a contract entered into in any other manner is not binding upon the city, and is void. Fountain v. Sacramento, 1 Cal. App. 461, 82 P. 637; Santa Cruz Pav. Co. v. Broderick, 113 Cal. 628, 45 P. 863; Sutro v. Pettit, 74 Cal. 337, 16 P. 7, 5 Am. St. Rep. 442; Durango v. Pennington, 8 Colo. 257, 7 P. 14; Hudson v. Marietta, 64 Ga. 286; Littlefield v. Boston & A. R. Co., 146

Mass. 268, 15 N. E. 648; Niles W. W. v. Niles, 59 Mich. 311, 26 N. W. 525; Moreland v. Passaic, 63 N. J. Law, 208, 42 A. 1058; Francis v. Troy, 74 N. Y. 338; Carpenter v. Yeadon Borough, 208 Pa. 396, 57 A. 837; Ft. Scott v. Eads (C. C. A.) 117 F. 51. The contract here was signed and executed by the mayor and the incinerator company before the resolution or ordinance authorizing it was entered in the minute book and before the minutes and ordinance were signed by two members of the commission, and hence the mayor was without authority to execute said contract, and same is void. Mobile v. Mobile Elec. Co., 203 Ala. 574, 84 So. 816; Acts 1911, p. 337, § 8. A contract must conform to the resolution authorizing it. Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20.

Vincent F. Kilborn and Harry T. Smith & Caffey, all of Mobile, for appellees.

In the absence of a statute requiring it, a municipality is not required to let contracts under competitive bidding. Mobile v. Mobile Elec. Co., 203 Ala. 574, 84 So. 816; Board of Rev. v. Merrill, 193 Ala. 521, 68 So. 971. The power to provide incinerators is expressly conferred, without limitation upon the governing board of the city as to the matter of contracting; the board is vested with discretion to determine the city's needs. Code 1923, § 2039; Mayor, etc., v. Rumsey & Co., 63 Ala. 352; Reid v. Mobile, 213 Ala. 321, 104 So. 788. Sections 1911–2182 of the Code of 1923 are without application to this contract. Pierce v. Huntsville, 185 Ala. 491, 64 So. 301. The ordinance providing for the letting of contracts on competitive bidding is not binding on the commissioners. 3 McQuillin, Mun. Corp. § 1192; Bunker v. Hutchinson, 74 Kan. 651, 87 P. 884. Such statutes and ordinances never have application where the circumstances are such that each bid would be based upon different specifications. 3 McQuillin, §§ 1189, 2656; Hartford v. Hartford E. L. Co., 65 Conn. 324, 32 A. 925; Douglass v. Com. ex rel. Senior, 108 Pa. 559; American Pavement Co. v. Wagner, 139 Pa. 623, 21 A. 160; Newport News v. Potter (C. C. A.) 122 F. 321; Horgan v. New York, 114 App. Div. 555, 100 N. Y. S. 68; 28 Cyc. 658. There must always be a discretion to purchase, not the cheapest, but the best, and statutes restricting municipal authorities to purchase from the lower bidder always admit of the exercise of discretion as to fitness and value of the article offered. McQuillin, §§ 1321, 1187; Sedalia Nat. Bank v. Economy S. H. & E. Co., 145 Mo. App. 319, 130 S. W. 377; Comm. v. Mitchell, 82 Pa. 343; Brick & Paving Co. v. Philadelphia, 164 Pa. 477, 30 A. 383; Findley v. Pittsburgh, 82 Pa. 351; Appeal of McCallin, 1 Monag. (Pa.) 596. Contracts of municipal authorities within the line of their authority can be questioned only for fraud. Pilcher v. Dothan, 207 Ala. 421, 93 So. 16; Henderson v.

Enterprise, 202 Ala. 277, 80 So. 115; McQuillin, § 1187; Elliot v. Minneapolis, 59 Minn. 111, 60 N. W. 1081; Price v. Fargo, 24 N. D. 440, 139 N. W. 1054; Madison v. Harbor Board, 76 Md. 395, 25 A. 337; Gantenbein v. Pasco, 71 Wash. 635, 129 P. 374; Beazley v. Kennedy (Tenn. Ch. App.) 52 S. W. 791. The courts cannot inquire into the motives of municipal officers executing a contract, if the other party is innocent. Henderson v. Enterprise, supra; Pilcher v. Dothan, supra. Provisions for payment of city licenses and builder's permit, if void, would not affect the rest of the contract; although there is no legitimate objection to provisions of this kind, expense of which is not charged to the taxpayer. Birmingham Mayor, etc., v. Birmingham W. W. Co., 139 Ala. 533, 36 So. 614, 101 Am. St. Rep. 49; Gadsden v. Mitchell, 145 Ala. 137, 40 So. 557, 6 L. R. A. (N. S.) 781, 117 Am. St. Rep. 20; Weller v. Gadsden, 141 Ala. 642, 37 So. 682, 3 Ann. Cas. 981; Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20. The contract sought to be enjoined was not let pursuant to bids, but was a private contract reached after private negotiations. Dunn Const. Co. v. White, 209 Ala. 460, 96 So. 444. The courts are without jurisdiction to intervene under the circumstances shown by the bill. Board of Rev. v. Merrill, 193 Ala. 521, 68 So. 971; Cramton v. Montgomery, 171 Ala. 478, 55 So. 122; Clements v. Birmingham, 215 Ala. 59, 109 So. 158; Culpepper v. Phenix City, 216 Ala. 318, 113 So. 56; Pilcher v. Dothan, supra; White v. Mayor, etc., 119 Ala. 476, 23 So. 999; Intendent, etc., v. Pippin, 31 Ala. 542; State v. Mobile County, 209 Ala. 98, 95 So. 374; Talladega v. Jackson-Tinney Lumber Co., 209 Ala. 106, 95 So. 455.

BOULDIN, J. This is a taxpayers' suit to avoid for illegality and to enjoin the execution of a contract entered into by the board of commissioners of the city of Mobile with the Superior Incinerator Company of Texas, at Dallas, Tex., for the construction and installation of two incinerators for the municipality. The appeal is from a decree sustaining demurrers to the bill.

The contract is assailed upon the ground, among others, that it was made in violation of section 1911, Code of 1923, which reads:

"The award of each contract for which bids have been submitted shall be made to the lowest responsible bidder, who may comply with such reasonable regulations as may be prescribed before the bids are called for."

The pertinent averments of the bill in this regard are to this effect:

Sealed bids were invited by advertisement for the construction of two incinerator plants, each with a capacity of not less than 50 tons per day of 12 hours. Bidders were to submit detailed plans and specifications with their proposals, the price bid to cover

the entire cost of construction according to such plans and specifications.

The advertisement for bids contained these further provisions:

"After the bids are received, the city commissioners will consider same and, after consideration and investigation into the merits of each bid, will award the contract to the bidder who, in their opinion, has submitted the most desirable proposal. * * * The right is reserved to reject any or all bids."

Bids were submitted by the Superior Incinerator Company and the Nye Odorless Crematory Company, of Macon, Ga., each accompanied by plans and specifications of its own type of plant. The Nye Company submitted the lower bid. A committee appointed by the city commissioners visited plants installed by each company in several cities, reported plants of the "Superior" and "Nye" types were free from odors or offensive smoke, and, "In our judgment there is no difference in their efficiency in burning garbage, cost of operating, and cost of maintenance," and, "for the purposes of Mobile, either type would be acceptable." The bill further avers that the "Nye" incinerator is equal or superior to that of the Superior Company; that the Nye Company was a responsible bidder, and its bid was not rejected because it was not a responsible bidder; that, nevertheless, the board of commissioners entered into negotiations with the Superior Company resulting in some modification of specifications, and letting the contract at a reduced price, but in excess of the original bid of the "Nye" Company, and largely in excess of a later proposal of that company, pending negotiations with the Superior Company; that in awarding the contract the commissioners "did not exercise a fair and just discretion in the premises, but that they exercised an arbitrary judgment in the matter, without a reasonable basis of fact to support the awarding of said contract;" that the excess cost was a mere waste of money at the expense of the taxpayers of Mobile.

[1] Dealing with the application of the Code, § 1911, to this state of facts, it will be noted that section contains no mandatory requirement for letting municipal contracts on competitive bids. It is open to the corporate authorities to adopt this method, or to let contracts in such way as may be deemed best under the conditions. But it does require that when competitive bidding is selected as the method of letting a contract, it must be let to the lowest responsible bidder complying with the regulations prescribed before bids are called for. In such case, the statute makes applicable the general rules of law governing the awarding of contracts by competitive bids.

Judged by these rules, did the action of the commissioners inviting bids in this case

bring it within the requirement that the contract be let to the lowest responsible bidder?

[2, 3] One of the essentials to competitive bidding is that bidders shall have opportunity to bid on the same thing. In case of public improvements or plants, the adoption of plans and specifications made available to all as a basis of their bids is a legal requirement. When bids are called for from manufacturers of different types of plants based on their own specifications, the necessity arises to determine whether any of them meet the specific needs of the city, and, if so, which is the better bid all things considered. This cannot be termed competitive bidding within the meaning of mandatory statutes requiring the awarding of contracts to the lowest bidder, and usually contracts so let are regarded as in violation of such statutes. McQuillin on Municipal Corporations, § 1211; City Council of Montgomery v. Barnett, 149 Ala. 119, 43 So. 92; Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20; Dunn Construction Co. v. White, 209 Ala. 460, 96 So. 444.

[4] Where, as here, there is no mandatory statute requiring contracts to be awarded on competitive bids, it is within the power of the city authorities to invite bids on such basis as it may deem best, reserving the power to reject all bids, or let the contract to the bidder submitting the most desirable proposal.

Such bidding may become a decided aid in the selection of the most desirable plant and in letting a contract on a reasonable cost basis.

[5] If the invitation for bids is not upon a proper basis for competitive bidding, but a call for proposals based upon the plans and specifications of the several bidders, the case does not come within our statute, but will be referred to the discretionary power to invite proposals subject to the right to reject all and enter into private negotiations.

[6] In the absence of a statute requiring an ordinance defining the manner of letting contracts, an ordinance providing that in certain cases they shall be awarded on competitive bids does not limit the power to make future contracts by other methods. 3 McQuillin, § 1192; 19 R. C. L. 893.

[7] Unless statutes require contracts to be authorized by ordinance, a proper resolution of the governing body identifying, approving, and directing the execution of the contract is sufficient authorization. 3 McQuillin, § 1179; Pierce v. City of Huntsville, 185 Ala. 490, 64 So. 301.

[8] Code, § 1993 (1252), declares no ordinance or resolution or permanent operation shall be passed at the same meeting at which it is introduced, except by unanimous consent expressed by yea and nay vote entered on the minutes.

In Pierce v. City of Huntsville, supra, certain improvement ordinances and resolu-

tions were held not of "permanent operation," within the meaning of section 1252, Code of 1907.

That section brought forward as section 1993, Code of 1923, was amended so as to provide:

"The council shall award no contract on bids except by resolution or ordinance of permanent operation."

The effect is to bring resolutions awarding contracts required by law to be upon competitive bids, and so awarded within the definition of a resolution of "permanent operation" under that section.

The letting of contracts by other methods, when authorized by law, is not within the terms of the amended section.

[9] The Commission Form of Government Act, applicable to the city of Mobile (Acts 1911, § 8, p. 337), provides:

"A record of the proceedings of every such meeting shall be kept in a well-bound book, and every resolution or ordinance passed by the board of commissioners must be recorded in such book, and the record of the proceedings of the meeting be signed by at least two of the commissioners before the action taken shall be effective."

The bill avers the contract was executed on behalf of the municipality by Harry T. Hartwell, mayor, and by the Superior Company before the resolution authorizing same was recorded. Because the contract was so executed at a time when the mayor had no legal authority so to do, the bill challenges the legality of the contract. It is not questioned that the contract was executed by the proper officer and in proper form, as in City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So. 816. Nor is it questioned that the empowering resolution was put to record in due course and became effective.

The execution of a contract implies signature and delivery by the parties. Manifestly, if this was done before the authorization became effective, the contract could be made effective at any time after the resolution was recorded by the formality of re-signing and redelivering of the instrument.

We think the purpose of the law is accomplished in holding the execution became effective when the resolution was put to record, and there was no necessity for a formal re-execution of the document. City of Talladega v. Jackson-Tinney Lumber Co., 209 Ala. 106, 95 So. 455; State v. Ellis, 211 Ala. 489, 100 So. 866.

[10] We construe the bill as a whole to aver the contract signed was the one referred to in the resolution as having been prepared by the city attorney, and approved by the resolution. This contract, with the specifications made part thereof, are both set out in the record. The specifications provide that the contractor shall have city license and building permit free in the execution of this contract for the city, and also provides the contractor shall carry workmen's compensation insurance on all labor employed in the work.

The later averment that these provisions were not contemplated by the resolution, and their insertion was, therefore, without authority, seems at variance with the bill as a whole.

The plenary power to make construction contracts for authorized city purposes, we think, implies the power to incorporate such provisions as are incident to such work conducted in a customary and businesslike way. We see no reason to question the right of the parties to stipulate for workmen's compensation insurance.

[11, 12] That the work of installation was to be done on a cost-plus basis, we think, furnishes no reason to declare such provision invalid. Assuming that the cost of such insurance is to be figured as a part of the cost to be paid by the city, we could not assume that a contract would have been accepted by the contractor, upon equally favorable terms, without the protection of such insurance. The terms of the contract, not illegal in themselves, and not infected with fraud, are within the discretion of the city authorities.

The case of Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20, involving terms of a contract imposing additional burdens upon property owners for local assessments, is not considered applicable to the instant case.

Many averments of the bill and an earnest argument go to the question of abuse of discretion in awarding this contract. In addition to the matters summarized in the opening statement of this opinion, the bill avers that after the receipt of sealed bids, that of the Superior Company being $93,000, and that of the Nye Company $79,000, or with ramps $82,500, Commissioners Harry T. Hartwell and George E. Crawford entered into negotiations with the Superior Company, resulting in an agreement to award the contract at $84,500, and a resolution was passed accordingly. Mr. Crawford died before the contract was executed, and Leon Schwarz and Cecil F. Bates became members of the commission. The former resolution was then rescinded and all bids canceled. Negotiations with the Superior Company proceeded to awarding the contract at $50,000 for the furnaces and all other labor and material for installation on a basis of cost plus 10 per cent., in no event to exceed a total cost of $84,500. Meantime the Nye Company had sent in a proposal to construct the two plants according to its plans and specifications, at $72,000. The basis of the charge of illegality here is in that in fact the Nye plants were equal to those of the Superior Company, that Commissioners Hartwell and Schwarz, over the protest of Mr. Bates, arbitrarily, and without the exercise of any

fair judgment in the premises, and with no basis of reason for such decision, awarded a contract involving some $12,500 greater cost to taxpayers than necessary. Other averments go to certain announcements of Mr. Hartwell to the effect that he was committed to the proposal of the Superior Company, and communications from Mr. Schwarz from which inferences are drawn that he had no objection to the merits of the Nye proposal.

[13] On demurrer, the averments of the bill must be taken as true. Whether a case for equitable relief is presented on this feature of the bill is the most difficult question in the case.

[14] A municipality is a unit of government. The governing body is vested with certain legislative, judicial, and administrative powers. In making contracts for municipal plants for public safety and convenience, within charter power, they act in a quasi legislative capacity. Acting upon a subject-matter committed to them and proceeding according to the forms required by law, the legislative discretion is vested in them, not in the courts.

[15] The courts deal only with the question of legality vel non. Many cases have been before this court in which the acts of governing bodies of counties and cities have been attacked as illegal because of alleged abuse of discretion, arbitrary action having no due regard to the public interest and the public trust committed to them.

[16] In all such cases it becomes manifest at once that, if entertained, the court must enter upon an inquiry whether the contract was in fact well advised, the result of fair judgment having a basis of reason. These are matters committed by law to the governing body of the city. Great care must be exercised by the courts not to usurp the functions of other departments of government. No branch of government is so responsible for the autonomy of the several governmental units and agencies as the judiciary. Accordingly, it has been many times declared the courts cannot and will not interfere with the discretion vested in the governing body of a municipality.

[17] So, it must be regarded as settled that the court will not interfere by injunction except in case of corruption, fraud, or bad faith, the equivalent of fraud.

[18] It may well be said all cases of arbitrary action, that is to say, action based on no sound basis of reason, but expressive of a will to rule without due regard to the public interests involved, have an element of bad faith. But abuse of discretion of this character does not warrant relief.

[19] The case before us well illustrates the reason of such rule. The basic charge here is that the Mobile commissioners arbitrarily selected the more costly of two equally efficient incinerator plants. Necessarily, the court is invited to pass upon the relative merits of the products of two rival manufacturers and their adaptation to the needs of Mobile.

Patently, this is the matter committed by law to the commissioners. To usurp that function, the courts would find themselves the general supervisors over the governing bodies of cities, an impossible task, subversive of all autonomy in government.

The bill does not make a case of fraud or corruption. It does not appear the price named for the type of incinerator selected was excessive or unreasonable, that any indirection or fraudulent methods were employed by the Superior Company, or even that such company had any advice of the greatly reduced offer of the Nye Company pending negotiations.

On this phase of the bill, we cite the following cases: Board of Revenue of Covington County v. Merrill, 193 Ala. 521, 69 So. 971; Cramton v. City of Montgomery, 171 Ala. 478, 55 So. 122; Clements v. City of Birmingham, 215 Ala. 59, 109 So. 158; Culpepper v. Phenix City, 216 Ala. 318, 113 So. 56; Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16; Henderson v. City of Enterprise, 202 Ala. 277, 80 So. 115; White v. Mayor of Decatur, 119 Ala. 476, 23 So. 999; Intendant and Town Council of Livingston v. Pippin, 31 Ala. 542; State ex rel. City of Mobile v. County of Mobile, 209 Ala. 98, 95 So. 374; City of Talladega v. Jackson-Tinney Lumber Co., 209 Ala. 106, 95 So. 455. Also, Town of Eutaw v. Coleman, 189 Ala. 164, 66 So. 464; Matkin v. Marengo County, 137 Ala. 155, 34 So. 171; City of Albany v. Spragins, 208 Ala. 122, 130, 93 So. 803.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.